```
 1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                          NORTHERN DIVISION

 3   _____ )

     UNITED STATES OF AMERICA        )
 4                                    )
          v.                         )   Criminal Docket No. RDB-17-0640
 5                                    )
     MARK IAN GAVER,                 )
 6            Defendant              )
     _____ )
 7                                          Baltimore, Maryland
                                            December 13, 2018
 8                                          3:08 PM to 4:33 PM

 9              THE ABOVE-ENTITLED MATTER CAME ON FOR
                              SENTENCING
10           BEFORE THE HONORABLE RICHARD D. BENNETT

11                    A P P E A R A N C E S

12   On behalf of the Government:

13        Jefferson McClure Gray, Assistant U.S. Attorney
          Jeffrey Izant, Assistant U.S. Attorney
14
     On behalf of the Defendant:
15
          Steven Hale Levin, Esquire
16
     Also present:
17
          FHFA OIG Special Agent George Wahl
18        FBI Special Agent Loi Cao
          FBI Special Agent David Rutledge
19        U.S. Probation Officer Gina Swillo

20

21       Proceedings recorded by mechanical stenography,
     transcript produced by computer.
22   _____

23            MARTIN J. GIORDANO, RMR, CRR, FOCR
               U.S. Courthouse, Fourth Floor
24              101 West Lombard Street
               Baltimore, Maryland 21201
25                    410-962-4504
```

1        <u>**PROCEEDINGS OF DECEMBER 13, 2018**</u>

2            **THE CLERK:**  All rise.  This Honorable Court now

3    resumes in session, The Honorable Richard D. Bennett presiding.

4            **THE COURT:**  Good afternoon, everyone.

5            **MR. GRAY:**  Good afternoon, Your Honor.

6            **THE COURT:**  This is calling the case of *United States*

7    *versus Mark Gaver*, Criminal Number RDB-17-0640.

8                The Defendant was found guilty by a jury after an

9    eight-day jury trial on August the 1st of this year and was

10   found guilty on Counts 1 through 8 of the Indictment charging

11   him with bank fraud, in violation of 18 United States Code

12   § 1344; and money laundering as charged in Counts 9 and 10, in

13   violation of 18 United States Code § 1957, and we are here for

14   sentencing today.

15               If counsel would identify themselves for the record,

16   please.

17           **MR. GRAY:**  Yes, Your Honor.

18               Jefferson Gray, Assistant United States Attorney,

19   here on behalf of the United States, and with me at Government

20   counsel table is Assistant United States Attorney Jeff Izant

21   and Special Agent George Wahl of the Federal Housing Finance

22   Administration, Office of the Inspector General.

23           **THE COURT:**  Yes.  Mr. Gray, nice to see you.

24               And, Mr. Izant, nice to see you.

25               And, Agent Wahl, nice to see you as well.

1          **S/A WAHL:**  Thank you, Your Honor.

2          **THE COURT:**  Welcome.  And I believe with you are also

3    agents in the case, Agent Loi Cao; am I correct?

4          **MR. GRAY:**  Loi Cao.

5          **THE COURT:**  Loi Cao.  Agent Cao, nice to see you

6    again.  I've had you before.

7          **S/A CAO:**  Good morning, Your Honor.

8          **THE COURT:**  Nice to see you.

9          And, also, David Rutledge, who submitted an affidavit

10    in support of a forfeiture application.

11          **MR. GRAY:**  Correct, Your Honor.

12          **THE COURT:**  And I've read your affidavit, and welcome

13    to all of you.

14          And we also have with us Ms. Gina Swillo, the U.S.

15    probation officer who prepared the presentence report.

16    Ms. Swillo, nice to see you.

17          **PROBATION OFFICER:**  Good afternoon, Your Honor.

18          **THE COURT:**  Thank you for your report.

19          And on behalf of the Defendant?

20          **MR. LEVIN:**  Good afternoon, Your Honor.

21          Steve Levin, on behalf of Mark Gaver, who is seated

22    to my right.

23          **THE COURT:**  Yes.  Mr. Levin, nice to see you.

24          And if you'll please stand, Mr. Gaver.  Good

25    afternoon to you as well, sir.

1          **MR. LEVIN:**  Your Honor, with your permission,

2     Mr. Gaver uses a cane.  I'm just wondering, given his poor

3     health --

4          **THE COURT:**  That's fine.  You may be seated,

5     Mr. Gaver.  Go right ahead.  You may be seated.  That's fine.

6          But if you'll remain standing for a minute,

7     Mr. Levin.  I want to thank you for your service to the Court.

8     The record will reflect that Mr. Levin, I think, is the third

9     lawyer here to represent Mr. Gaver after two different attorney

10    inquiries and the Defendant's dissatisfaction with two previous

11    counsel, and he is a highly-respected officer of this Court and

12    a former Assistant U.S. Attorney, and I very much appreciate

13    your taking this appointment to represent Mr. Gaver in this

14    sentencing matter, Mr. Levin, and I thank you very much.

15          **MR. LEVIN:**  Certainly, Your Honor.  Thank you.

16          **THE COURT:**  Thank you very much.

17          And, with that, Mr. Gaver, let me just go over the

18    process here in federal court with respect to sentencing as a

19    result of your trial and conviction by a jury in this matter.

20          First of all, have you had occasion to review the

21    presentence investigation report in this case, Mr. Gaver, which

22    was prepared by Ms. Swillo, the U.S. probation officer?

23          **THE DEFENDANT:**  Yeah, I have looked at it.

24          **THE COURT:**  I'm sorry.  Why don't you pull the

25    microphone down closer to you, please.  You say you've had

1    occasion to look at it?

2                **THE DEFENDANT:**  I've had occasion to look at it.

3                **THE COURT:**  And have you reviewed it with Mr. Levin,

4    your attorney here for sentencing?

5                **THE DEFENDANT:**  No.

6                **THE COURT:**  Okay.  But you've looked at it yourself;

7    is that correct?

8                **THE DEFENDANT:**  I did.

9                **THE COURT:**  Okay.  And how many times have you

10   reviewed it and looked at it?

11              **THE DEFENDANT:**  I looked at it one time.  It wasn't

12   worth the paper it was written on.

13              **THE COURT:**  I beg your pardon.

14              **THE DEFENDANT:**  It wasn't worth the paper it was

15   written on.

16              **THE COURT:**  Well, we'll make a determination of that

17   later, Mr. Gaver.

18              **THE DEFENDANT:**  Thank you, sir.

19              **THE COURT:**  I strongly advise you to refrain from

20   those kinds of comments.

21              **THE DEFENDANT:**  Yes, sir.

22              **THE COURT:**  You understand?

23              **THE DEFENDANT:**  Yes, sir.

24              **THE COURT:**  Mr. Gaver, look at me.  Look at me.

25             I'm giving you some friendly advice here today.

```
 1              THE DEFENDANT:  Yes, sir.  I'm sorry.
 2              THE COURT:  I strongly suggest you show respect for
 3    the Court, and you do not pipe in with comments such as that.
 4    Do you understand?
 5              THE DEFENDANT:  Yes, sir, I do.  I'm sorry.
 6              THE COURT:  All right.  Then if you can have
 7    something --
 8              THE DEFENDANT:  I apologize.
 9              THE COURT:  -- constructive, you talk to -- I beg
10    your pardon?
11              THE DEFENDANT:  I apologize.
12              THE COURT:  Your apology is accepted, but don't do
13    that again.
14              THE DEFENDANT:  I won't, sir.  Thank you.
15              THE COURT:  Do you understand?
16              THE DEFENDANT:  Yes, sir.
17              THE COURT:  Okay.  More than a few people have made
18    big mistakes at sentencing, and, years later, they regret it.
19    You understand, Mr. Gaver?
20              THE DEFENDANT:  Yes, sir, I do.
21              THE COURT:  Do you understand that?  When I speak to
22    you, look at me.
23              THE DEFENDANT:  Yes, sir, I do.
24              THE COURT:  That's fine.  That's fine.  You talk
25    through your lawyer, and no more comments of any kind like that
```

1    to this Court -- not for me, but for the respect for the U.S.

2    District Court for the District of Maryland.

3            Do you understand that, Mr. Gaver?

4            **THE DEFENDANT:**  Yes, sir, I do.

5            **THE COURT:**  You will show respect for this Court.

6            **THE DEFENDANT:**  Yes, sir, I understand.  Thank you,

7    sir.

8            **THE COURT:**  All right.  You get that straight right

9    now.

10           Now, with respect to any corrections or objections by

11   the Government, are there any corrections or objections by the

12   Government, Mr. Gray?

13           **MR. GRAY:**  There are none from the United States,

14   Your Honor.

15           **THE COURT:**  All right.  And, Mr. Levin, I don't note

16   any corrections or objections you have to the guideline

17   calculation from your point of view.

18           **MR. LEVIN:**  Actually, Your Honor, I raised but didn't

19   elaborate on an objection to the two-level adjustment for

20   obstruction of justice.

21           **THE COURT:**  All right.  We can address that.  And

22   that relates to Paragraph --

23           **MR. LEVIN:**  Thirty-nine, I believe.

24           **MR. GRAY:**  Thirty-nine is correct.

25           **THE COURT:**  Yes.  Paragraph 39.  And that is

1     reflected with respect to Paragraph --

2            **MR. LEVIN:**  Thirty.

3            **THE COURT:**  Thirty.  I'm sorry.  No.  That's

4     reflected with respect to Paragraph 28, and there is

5     information in Paragraph 28 that gives rise to a two-level

6     obstruction in Paragraph 29 and 39, and we will address those

7     in a few minutes.

8            **MR. LEVIN:**  Thank you, Your Honor.

9            **THE COURT:**  That's fine.  And we'll certainly address

10    those, and I'll note that.

11      (Pause.)

12           **THE COURT:**  So Paragraph 28 and Paragraph 39 will be

13    addressed in a moment here.

14         Now, with respect to the forfeiture order in this

15    case, I would note that, on July 30, 2018, during the charge

16    conference in this case, prior to submission to the jury -- and

17    it was a matter of record and was put on the record -- I

18    informed Mr. Gaver of his right to a jury trial on the

19    forfeiture count and of the potential procedures should he

20    waive that right.  I confirmed on the record that Mr. Gaver

21    waived his right to a jury trial on the forfeiture count, and I

22    explained to him at that time that, in the event that the jury

23    convicted him on non-forfeiture counts, I would address the

24    Government's forfeiture count as part of the sentencing

25    process, and, additionally, even noted that if there were any

1    third-party claims to the assets at issue, and that's a matter

2    of record here on July 30, 2018.

3          I have before me the Government's submission with

4    respect to the proposed forfeiture order, Document 102, and the

5    proposed order of forfeiture, Document 102-1.  And I would note

6    that, Mr. Gray, you've indicated that Mr. Levin, Court-

7    appointed counsel for Mr. Gaver, has indicated that there is no

8    intent to contest the forfeiture of the assets or properties

9    discussed in that forfeiture order, correct?

10         **MR. GRAY:**  Yes.  That was my understanding based on

11   the telephone conversations with Mr. Levin.

12         **THE COURT:**  Is that correct, Mr. Levin?

13         **MR. LEVIN:**  It is, Your Honor.

14         **THE COURT:**  Okay.  And I will sign this order.  I

15   will note that I have reviewed the affidavit of David M.

16   Rutledge, which is Paper Number 100, which is also part of the

17   record in this case, and I have reviewed it in support of that

18   preliminary order of forfeiture, and I will take out the word

19   "preliminary" here and line it out, and I will sign this Order

20   of Forfeiture here today.

21         Madam Clerk, this will be referenced in the Judgment

22   and Commitment Order.

23         **THE CLERK:**  Yes.  Thank you.

24      (Pause.)

25         **THE COURT:**  Madam Clerk?  All right.  Let me get a

1    copy of this, would you?

2            **THE CLERK:**  Yes.

3            **THE COURT:**  All right.  Yes.  Give me back a copy of

4    that if you would.  Thank you very much.

5            **THE CLERK:**  Okay.

6        (Document tendered to the Clerk.)

7            **MR. GRAY:**  And, Your Honor --

8            **THE COURT:**  Yes?

9            **MR. GRAY:**  -- let me just speak to one matter about

10   that just so everything is totally clear on the record.

11           It is my expectation that there may be third-party

12   challenges to components of that Order from Revere Bank in

13   connection with the 5051 Pelican Colony property and perhaps

14   from Mrs. Frances Gaver, the Defendant's mother, in connection

15   with her account.

16           **THE COURT:**  Right.  And that's separate from the

17   civil action in this case, is it not, or there is a separate

18   civil action, Santander Bank; is there not?

19           **MR. GRAY:**  There is, but those two parties would have

20   the ability as part of the criminal case to come in and assert

21   any claims they have to those assets.

22           **THE COURT:**  All right.  So we'll wait and see on

23   that.

24           All right.  And so, with that, I think that we are

25   ready to proceed here, and I'll keep a copy of that, Madam

1    Clerk, definitely in terms of the forfeiture issue.

2            **THE CLERK:**  Yes.

3            **THE COURT:**  Okay.  So, with that, we are ready to

4    proceed here with respect to sentencing.

5            Let me explain to you, Mr. Gaver, the process for

6    sentencing in federal court, and this is true for all federal

7    criminal defendants who face sentencing here in federal court.

8            There are two key opinions of the United States

9    Supreme Court issued in the past now almost 14 years going back

10   to January of 2005.  In January of 2005, the United States

11   Supreme Court issued its opinion in *United States versus*

12   *Booker*, in which the Supreme Court of the United States upheld

13   the constitutionality of the federal sentencing guidelines,

14   which have been referenced by the Government as well as your

15   counsel in the sentencing memos which have been submitted, and

16   are also referenced in the presentence investigation report,

17   but the Supreme Court upheld the constitutionality of the

18   federal sentencing guidelines with the deletion of two

19   particular sections of the guidelines which had previously

20   rendered the guidelines mandatory.

21           In the *Booker* case, in January of 2005, now almost 14

22   years ago, the Supreme Court specifically noted that, while it

23   was upholding the constitutionality of those guidelines and the

24   Sentencing Reform Act of 1984, those guidelines were henceforth

25   to be applied in an advisory context and were rendered

1    effectively advisory, meaning that federal judges throughout

2    the United States will look to those guidelines in an advisory

3    context only, but they're not mandatory.  They're not required.

4    They're meant to provide a guide to the Court.

5              Do you understand that, sir?

6         **THE DEFENDANT:**  Yes, sir.

7         **THE COURT:**  All right.  And, under the approach

8    adopted by the Supreme Court in the *Booker* case, federal

9    judges, while not bound to apply the guidelines, must still

10   consult them and take them into account when imposing a

11   sentence, subject to review by Courts of Appeals, and so an

12   appeal that you file in this case with respect to the verdict

13   of guilty by the jury can include an appeal of any sentence I

14   impose.

15             Do you understand that?

16        **THE DEFENDANT:**  Yes, sir.

17        **THE COURT:**  All right.  And I said there were two key

18   opinions of the United States Supreme Court.  The second of

19   those two opinions was actually rendered exactly 11 years ago

20   this week in December of 2007.  The Supreme Court, in the case

21   of *Gall versus The United States*, specifically noted that

22   federal judges should not presume that the guideline range is

23   reasonable, but it is a starting point in a multistep process

24   pursuant to which, first, there is a calculation of the

25   advisory guideline range, and then there is a determination of

whether or not a sentence within that range serves the factors to be achieved.  And those factors, under 18 United States Code § 3553(a), include the following types of factors that should also be considered apart from the guidelines.

Those factors include the nature and circumstances of the offense, your personal history and characteristics, unwarranted sentencing disparities.  All those kinds of issues are listed as well when I determine what the appropriate sentence here is in this case.  And, if I impose a sentence outside of the advisory guideline range, even though it's advisory, I should indicate my reasons for doing so.

So essentially the goal is to impose a sentence which is sufficient but not greater than necessary to achieve the goals of sentencing.

Now, a few other preliminary housekeeping matters, Mr. Gaver.  First of all, I note that, in Paragraph 68 of the presentence investigation report prepared by Ms. Swillo, that you list certain medications that you have taken in the past, or you're currently taking.  Specifically, Zoloft and Plavix are two that I noted.

Did you take any medication today?

**THE DEFENDANT:**  Your Honor, I'm on 14 different medications.

**THE COURT:**  Okay.

**THE DEFENDANT:**  So, yes, I took medication today, and

1    I'll take it again tonight.

2            **THE COURT:**  All right.  And so you're taking them

3    each morning and each evening; is that correct?

4            **THE DEFENDANT:**  Yes, sir.

5            **THE COURT:**  And how long have you been doing that?

6            **THE DEFENDANT:**  Oh, since I had my first heart attack

7    in 2004.

8            **THE COURT:**  Okay.  All right.  So you've been taking

9    this kind of medication for a long period of time?

10            **THE DEFENDANT:**  Yes, sir.

11            **THE COURT:**  Okay.  All right.  And you're accustomed

12    to taking it every day, correct?

13            **THE DEFENDANT:**  Yes, sir, I am.

14            **THE COURT:**  Mr. Levin, based upon the fact that he's

15    taken medication that he has routinely taken for many, many

16    years, do you see any reason to doubt his competence to proceed

17    with sentencing here today?

18            **MR. LEVIN:**  No, Your Honor.

19            **THE COURT:**  All right.  So, with that, we will

20    proceed.

21            Another housekeeping matter, Mr. Gaver, I need to go

22    over with you is -- are the procedures, rather, of the Protect

23    Act of 2003, and that was a law that was passed by the U.S.

24    Congress in that year, and there are many provisions of that

25    Act, but some of those provisions specifically relate to

1    federal courts when imposing sentences in federal criminal

2    cases.  Now, this applies to federal courts around the United

3    States, not state courts.  And, specifically, the Protect Act

4    requires that the chief judge of each federal court in the

5    United States ensure that, within 30 days of the imposition of

6    sentence, that certain documents go over to the U.S. Sentencing

7    Commission in Washington.

8         Those documents include the Judgment and Commitment

9    Order, which I'll be preparing with the assistance of Ms. Tyson

10   at the end of today as well as tomorrow morning; the statement

11   of reasons for the sentence imposed, which should include the

12   reason for any departures from the otherwise applicable

13   guideline range, if there is a departure; any plea agreement in

14   the case, which is not applicable here; the Indictment; the

15   presentence report; and any other information the Sentencing

16   Commission finds appropriate.

17        And the Chief Judge of this Court issued an

18   administrative order back in 2003 directing Ms. Swillo's

19   office, the U.S. Probation Office, to forward this information

20   to the U.S. Sentencing Commission in Washington.

21        That means that some of these documents, Mr. Gaver,

22   may be subject to review by other public officials over in

23   Washington, or perhaps even by members of the public, and, for

24   a long period of time, it's been the policy here in this Court

25   that there is a section marked "Defendant Characteristics,"

1  containing confidential family information, that is routinely

2  sealed.  It dates back to 2004, and there was an order actually

3  revised a few years ago, pursuant to which, routinely, Part C

4  of any presentence report, containing confidential family

5  information, is sealed.

6          Part C in your presentence investigation report

7  starts in Paragraph 51 on Page 16 and goes to Paragraph 85 on

8  Page 20, and that portion of the presentence investigation

9  report, I have reviewed it, another judge of this Court could

10 review it if he or she so desired, although they have not, and

11 members of the U.S. Sentencing Commission can review it, but no

12 one else is permitted to see it absent order by me.  No member

13 of Congress would be permitted to see it.  There are only

14 limited people who are allowed to see that private information,

15 including private financial information.

16          To all other extent, the requirements of the Protect

17 Act are still mandated and to be complied with.

18          Now, I said that the first step here is to calculate

19 the advisory guideline range.  That is set forth on Page 12 and

20 13 of the presentence investigation report.  And, Mr. Gaver,

21 essentially what's involved is what is called grouping with

22 respect to the money laundering charges in Count 9 and 10 with

23 the bank fraud charges in Counts 1 through 8, and, all told, in

24 light of the fact that the loss in this case was more than

25 $25 million but less than 65 million, the offense level is

1    increased by 22 from a base offense level of 7.

2           And, because the offense involved sophisticated means

3    and that you've been found guilty of intentionally engaging or

4    causing that conduct constituting those sophisticated means,

5    there is another two-level increase.

6           And there is also another two-level increase because

7    of gross receipts in excess of $1 million.  So, all told, there

8    is a base offense level -- an initial offense level of 33.  You

9    were convicted of money laundering in Counts 9 and 10 in

10   violation of 18 United States Code § 1957, so there is an

11   additional level, so that you're up to 34.

12          There is a two-level adjustment for obstruction of

13   justice in that it's contended in the presentence report that

14   you willfully obstructed or impeded or attempted to obstruct or

15   impede the administration of justice.  Specifically, that

16   relates to the information contained in Paragraph 28 in terms

17   of the allegation in the report that you lied with respect to

18   civil proceedings under oath in a judicial proceeding.  We'll

19   be addressing that issue in a moment.

20          So there is a total offense level of 36.

21          You have no criminal convictions here, so you have

22   the lowest of six criminal history categories of I out of a

23   possible VI.  There is a pending charge in Florida, which is

24   still open, with respect to sexual cyber harassment, and that's

25   in the -- essentially in the Circuit Court for Lee County in

1    Fort Myers, Florida, and I'm not going to consider that because

2    you have not been convicted on that charge, but I will

3    certainly consider any facts attendant to that case.

4          So, with that, there is a total offense level of 36,

5    a criminal history category of I, which provides that there is

6    an advisory guideline range of 188 months to 235 months, which

7    translates out to essentially some 15 and a half years to some

8    19 and a half years in prison under the advisory guideline

9    range.

10         We do have one disputed matter that I will address

11   with respect to the two-level upward adjustment for obstruction

12   of justice, and, with that, I'd be glad to hear from you,

13   Mr. Levin, on your objection on that.

14         **MR. LEVIN:**   Thank you, Your Honor.

15         Briefly, ours is a very simple argument.  Mr. Gaver's

16   purported lies during a civil deposition involving a divorce

17   proceeding is simply too attenuated to say that it relates to

18   the offense or offenses for which he was convicted.  We're

19   talking about a divorce proceeding, and of course there was ill

20   will.  I'm sure the Court is very familiar with that proceeding

21   in the way that it developed.

22         There was ill will between Mr. Gaver and his ex-wife

23   and her lawyer, and there were statements -- apparently false

24   statements made, but those statements related to an effort by

25   Mr. Gaver's ex-wife to benefit financially from the divorce

1   proceeding.  It really had very little, if anything, to do with

2   this case.

3          That's the argument, Your Honor.  We'd ask that you

4   not impose that two-level adjustment.

5          **THE COURT:**  All right.  Thank you, Mr. Levin.

6          Mr. Gray, do you want to be heard on that?

7          **MR. GRAY:**  Yes, I do, Your Honor.

8          As I noted in our sentencing memo, the guidelines

9   themselves, in the provision that deals with obstruction of

10  justice, § 3C1.1, in Application Note 4(a), expressly state

11  that committing, suborning, or attempting to suborn perjury,

12  including during the course of a civil proceeding, if such

13  perjury pertains to conduct that forms the basis of the offense

14  of conviction, is a ground for applying this obstruction of

15  justice enhancement.

16         The particular facts that we relied upon -- and it

17  was extremely relevant at trial -- were the facts relating

18  to -- that Mr. Gaver testified falsely that the Grant Thornton

19  accounting firm had, in fact, done annual audits of

20  GTI Federal.  He further testified falsely that they had been

21  paid on an annual basis for doing those returns.

22         And, when his wife's counsel attempted to further

23  inquire as to those matters, Mr. Gaver stood up abruptly, said,

24  "We're done here," and stormed out of the room, and terminated

25  the deposition.

1            Those facts were so central to trial that certainly

2     all of the false Grant Thornton audits that we could find were

3     introduced in evidence during the Government's case, and I

4     expressly -- we also introduced the relevant portions of that

5     deposition, I think as Government Exhibit 33, and that's

6     included in Exhibit 11 to our sentencing memo, and I know that

7     I, in particular, addressed that matter in my rebuttal argument

8     in the case.

9            In addition to that, as we've laid out in Government

10    Exhibit 1 to the sentencing memo, there was basically a

11    yearlong campaign of intimidation and what I can only

12    characterize as emotional terrorism that the Defendant directed

13    against former Mrs. Gaver; against her counsel,

14    Mr. Herman Tarnow, attempting to dissuade them from continuing

15    to go forward on a course that would inevitably lead to the

16    exposure of the fraud that had been committed by him at GTI.

17            So I think, on both of those grounds, certainly very

18    strongly on the first ground, it falls squarely within the

19    guidelines commentary, the false statements in the deposition.

20    And, as soon as the company was turned over to Mrs. Gaver, only

21    nine months later, that resulted in the immediate exposure of

22    the fraud, and, in particular, the fraud in relation to the

23    Grant Thornton documents.  And then also this amazing campaign,

24    about which I'll have a little more to say later, of

25    intimidation, harassment, and really psychological terrorism

1    directed against those individuals and the threats that were

2    made against them.

3            **THE COURT:**  Thank you very much, Mr. Gray.  Do you

4    want to add anything further on this, Mr. Levin?

5            **MR. LEVIN:**  No, Your Honor.

6            **THE COURT:**  All right.  First of all, it wasn't the

7    least bit attenuated.  I've heard the evidence in this case

8    over an eight-day jury trial.  It was clear that the whole

9    house of cards of this fraud came tumbling down as a result of

10   the divorce proceedings between Mr. and Mrs. Gaver, and his

11   obstruction and lying under oath with respect to audits being

12   conducted of GTI's books by Grant Thornton was a total

13   fabrication, and it was a fabrication very much in tune with

14   the fabrication that allowed him to continue to try to

15   perpetuate this fraud, and it's not the least bit attenuated,

16   and, indeed, it is part and parcel of the fraud.

17           And, without question, the jury so found, and the

18   obstruction was actually essential for him to continue to try

19   to conceal the fraud, so the objection is noted and overruled,

20   and there will not be a change to Paragraph 39 or Paragraph 28

21   of the presentence investigation report, and the total offense

22   level remains at 36 with a criminal history category of I and

23   an advisory guideline range of 188 to 235 months.

24           Are there any other disputed matters from the point

25   of view of the Government on this matter, Mr. Gray?

1          **MR. GRAY:**  Not from the Government, Your Honor.

2          **THE COURT:**  Any other disputed matters from the point

3     of view of the Defense, Mr. Levin?

4          **MR. LEVIN:**  No, Your Honor.

5          **THE COURT:**  All right.  So, with that, we will

6     proceed.  First, I'll give Mr. Gray an opportunity to speak on

7     behalf of the Government; and then I'll recognize Mr. Levin for

8     remarks on behalf of Mr. Gaver; and then, Mr. Gaver, I'll give

9     you an opportunity to speak on your own behalf if you so

10    desire.

11          And so, with that, Mr. Gray, I'd be glad to hear from

12    you.

13          Let me just clarify something.  I've signed this

14    Forfeiture Order, but I don't know that I have any definite

15    figure as to restitution or a proposed restitution order or

16    figure; is that correct?

17          **MR. GRAY:**  We do, Your Honor.  There is a letter that

18    was submitted by Mr. James Ulwick, who is counsel for

19    Santander --

20          **THE COURT:**  Yes.  Mr. Ulwick is here, yes.

21          **MR. GRAY:**  -- back on October 2nd as part of the

22    docket in this case.

23          **THE COURT:**  Yes.  Hold on one second.  Wait a minute.

24    I think I have it right here.

25          (Pause.)

```
 1              THE COURT:  Yes.  I'm not sure if it's ever been made
 2    part of the record, though.  I mean, I have the submission.
 3              MR. GRAY:  Yes.  Well, it is filed.
 4              THE COURT:  And I'm sorry.  I stand corrected.  There
 5    is a request that this Court order restitution in favor of
 6    Santander in the amount of $48,774, or $48,774,308.75.  I
 7    believe that's the figure that I've got from Mr. Ulwick.
 8              MR. GRAY:  Is that correct?  75, or 25?
 9              THE COURT:  Is that correct, Mr. Ulwick?
10              MR. GRAY:  75, or 25?
11              MR. ULWICK:  75.
12              MR. GRAY:  75.
13              THE COURT:  I have 48 comma, 774, comma, 308.75.
14              MR. ULWICK:  That's it, Your Honor.
15              MR. GRAY:  All right.  Very good.  That's correct.
16              THE COURT:  So that will be the proposed figure for
17    restitution here on behalf of Santander, and I have the
18    submissions in support of that figure.
19              Let me just check the docket sheet here.
20         (Pause.)
21              THE COURT:  Yes.  I believe, Madam Clerk, if you'll
22    check that, that should be Paper Number 73.
23              THE CLERK:  I'm looking at it now, Your Honor.
24              THE COURT:  Yes.  It should be 73 with exhibits
25    attached thereto.
```

```
 1              THE CLERK:  Yes.

 2              THE COURT:  All right.  From what I can see from the

 3    docket sheet here.

 4              THE CLERK:  Thank you.

 5              THE COURT:  And that's a matter of record, and it has

 6    been itemized, and that's a matter of record here, including

 7    the declaration of Brett Bokelkamp, B-O-K-E-L-K-A-M-P, and it

 8    was entered on October the 2nd of this year.

 9              And then there were attached exhibits, and that will

10    be factored in, and I'll certainly give Mr. Levin an

11    opportunity to challenge if he so desires, but that will be the

12    restitution figure that we'll be dealing with here of 48,700 --

13    $48,774,308.75.

14              All right.  Thank you very much.  And, with that,

15    Mr. Gray, I've read your sentencing memorandum, Paper

16    Number 101, and I've looked at the exhibits attached thereto,

17    and I'll be glad to hear from you.

18              MR. GRAY:  Yes, Your Honor.

19              The way I'd like to organize my presentation this

20    afternoon is I'd like to begin by addressing some of the points

21    raised in the Defense's sentencing memorandum --

22              THE COURT:  Sure.

23              MR. GRAY:  -- and then I'll turn to my more general

24    argument with regard to the Defendant's sentence.

25              The Defense has argued for a variance based on the
```

 1    conditions that currently exist in Chesapeake Detention

 2    Facility, where the Defendant has been housed since, I think,

 3    probably the latter part of November, maybe early December.

 4         **THE COURT:**  He's actually been in federal custody.

 5    He's been in federal custody since November 15, 2017, in

 6    Florida, eventually was transferred up here.

 7         **MR. GRAY:**  Exactly.

 8         **THE COURT:**  But he's been in federal custody since

 9    November 15, 2017.

10         **MR. GRAY:**  That's correct, Your Honor.

11         And so I have prepared a letter for the Court that

12    I'd like to go through quickly this afternoon.  I've already

13    provided a copy of it to Mr. Levin, but I will give him

14    another.  And if I could ask Ms. Tyson to mark this.

15         **THE COURT:**  This will be Government's Exhibit 1.

16         **MR. GRAY:**  That's correct, Your Honor.

17         **THE CLERK:**  Hold one second, counsel.

18         **MR. GRAY:**  Actually, I've got a label on it.

19         **THE CLERK:**  Oh.  I'm so used to it not being there.

20    Thank you.  Sorry.

21         **MR. GRAY:**  Okay.  Great.  Thank you.

22         If I may hand this up to you, Your Honor?

23         **THE COURT:**  Thank you very much, Mr. Gray.

24       (Document tendered to the Court.)

25         **THE COURT:**  Thank you.

1          **MR. GRAY:**  Obviously the nature of the relationship

2    between the Federal Government and Chesapeake Detention

3    Facility is that that facility is operated and staffed by the

4    Maryland Department of Public Safety and Correction Services.

5    There is a contract between it and the Marshals Service that

6    provides for the Marshals Service to be permitted to house

7    federal prisoners there.  There is a memorandum of

8    understanding between the Marshals Service and the Department

9    of Public Safety that applies to the housing of federal inmates

10   there.

11          As I indicate in my letter, the CDF is subject to an

12   annual audit of its standards and operational performance.

13   There is a review that is done every year called a quality

14   assurance review, or a QAR.  The most recent one was done in

15   early June of 2018.  Before that, there was one in 2017.

16          There is also a full-time federal monitor who is

17   assigned to CDF, and it's my understanding that he is present

18   at CDF almost essentially a daily basis.

19          The --

20          **THE COURT:**  That's Mr. Marvin Bickham.  He's not

21   there on a daily basis, but he's there.

22          **MR. GRAY:**  Right.  That's right.  Maybe there as

23   needed to be available.

24          So there is a significant amount of sort of

25   oversight, scrutiny, and review that is directed at the

1    operation of CDF.  I mean, like any substantial facility, there

2    are certainly going to be some issues that arise, and those are

3    reflected by the annual audits, and those are then attempted to

4    be addressed on an ongoing basis.  So let me address the

5    particular claims that the Defense has advanced.

6              Number one, on Page 2, that CDF is overcrowded.  As I

7    note there, CDF has bed space for 500 detainees, and, as of

8    June 5th, 2018, the first day of the most recent quality

9    assurance review, which was a three-day process, there were a

10   total, I think, of only about 435 male and female detainees who

11   were located at that facility, and, as of September the 20th,

12   2018, only 425 of the 500 total beds were occupied.  And our

13   office's information is that the available bed space at CDF has

14   not been fully utilized in recent months and years.

15             The Defense also contended that the cells at CDF were

16   not air-conditioned with temperatures that routinely exceed 90

17   degrees in the summer months, the heating is inadequate, and

18   that the inmates have only a thin blanket, or at least

19   Mr. Gaver only had a thin blanket for warmth during the cold

20   months.

21             According to the recent QAR, the USMS and the

22   Department of Public Safety have recently invested $3.4 million

23   to fully revamp CDF's heating, ventilation, and air-

24   conditioning system.  That project was completed in the summer

25   of 2018, which I believe would have been approximately no more

 1    than seven to eight months into Mr. Gaver's stay at CDF.

 2              It's also indicated that CDF is filled with vermin.

 3    The QAR reports that CDF has retained a pest control company to

 4    conduct monthly inspections and to respond to vermin and pest

 5    control issues on an as-needed basis.  There were some

 6    deficiencies identified during a review in January 2018, but

 7    all of those have been corrected by the time of the QAR in June

 8    of 2018.  And one hates to note this, but problems with vermin

 9    in buildings in downtown Baltimore occur in all sorts of places

10    and are not necessarily that unusual.

11              It was stated at Page 7 of the Defendant's memorandum

12    that the kitchen conditions at CDF are deplorable.  The QAR

13    indicates that the kitchen was fully renovated in 2017, which

14    included the installation of new flooring and equipment,

15    resulting in a significant improvement in sanitation, and,

16    overall, I think there was a satisfactory rating that was given

17    to the kitchen and the food facilities as part of the most

18    recent QAR.

19              The Defense further alleges that the pluming and

20    sewage disposal systems are antiquated, deteriorated, and

21    desperately in need of repair.  There do, in fact, seem to be,

22    and this was conceded, I think, in the QAR, some repair issues

23    that are currently present there, but, in general, detainees at

24    CDF have access to clean and temperature-controlled showers,

25    and, you know, the administrators intend to keep tracking the

1        need for those repairs.

2               With respect to the quality of drinking water at CDF,

3        it was noted that CDF's potable water source was certified by

4        the Baltimore City Department of Public Works on April the 7th,

5        2018.

6               Finally, it was contended that the level of noise is

7        clearly annoying and increasingly irritating over time.  It is

8        so intolerable and intrusive that it renders the unit unfit for

9        human habitation.  The noise level can only be described as

10       excruciating.  That is Page 7 of the Defendant's memorandum.

11              According to the June 2018 QAR, noise level surveys

12       were conducted throughout the facility, and that survey

13       reflected that the levels did not exceed 70 decibels during the

14       day and 70 decibels at night contiguous on the A scale.

15              Based on what I've been able to determine from

16       looking online -- and I've attached some information to this

17       effect to this letter -- 70 decibels is the equivalent of

18       living-room music, a vacuum cleaner, or a passenger car passing

19       by at 65 miles an hour from 25 miles (sic) away.

20              In addition, the Defendant has contended to the

21       probation officer that he is legally deaf in both ears.  So,

22       under those circumstances, there appears to be ample reason to

23       believe that the noise levels should not be a major problem for

24       him.

25

1      **THE COURT:**  Just for the record, Mr. Gray, as you

2   probably know, I'm the cochair of the Criminal Justice Act

3   Committee of the Court.  I'm probably as familiar as anybody

4   with this.  I was a part of all these audits.

5      **MR. GRAY:**  Okay.  Very good, Your Honor.

6      **THE COURT:**  The conditions at CDF are not very

7   good --

8      **MR. GRAY:**  Yeah.

9      **THE COURT:**  -- but the notion that defendants -- the

10   argument *du jour* is that everyone comes in and says that the

11   conditions at CDF should cause some kind of variance, and I

12   have religiously not done that.  I treat all defendants the

13   same, and every defendant comes in here and complains about

14   CDF.  It's the best we can do for now.  We're trying to improve

15   it.  There have been some improvements.  Just so the record is

16   clear, the U.S. Marshals Service is not totally satisfied with

17   CDF, but we're doing the best we can do.

18      **MR. GRAY:**  Right.

19      **THE COURT:**  And so the conditions there don't give

20   rise to a variance on the part of any criminal defendant on any

21   cases, because we're just not going to go there.  I factor it

22   all in in terms of what an appropriate sentence is in the case,

23   but I don't reduce it or give additional credit because the

24   conditions at CDF have been difficult.

25      The fact of the matter is that the Defendant will get

1    credit for all time served in federal custody since he was

2    taken into federal custody in Florida in November of 2017, so

3    every day he's spent is credited against the time that will be

4    imposed upon him in the form of the sentence, but I'm not

5    giving any double credit for that.  So that's the way I

6    routinely handle it.  I thank you for your very thorough

7    analysis, and I'm well aware of it, so thank you.

8              **MR. GRAY:**  Very good.  Thank you, Your Honor.

9              The Defendant also was seeking a downward variance

10   based upon his health issues, and the Defense simply has not

11   presented to us or to this Court the kind of information that

12   would support such a request, and the Fourth Circuit has been

13   very skeptical of a request for downward departure based on

14   health conditions in the past, and the only time they have

15   recognized that it might be appropriate is in situations

16   involving very, very severe conditions.  I think I recall one

17   case that involved someone who was a double amputee in a

18   wheelchair, where the Fourth Circuit found that the district

19   judge properly determined not to give him a downward variance

20   on that ground.

21             The Defendant has again advanced the claim that he

22   has lung cancer.  I noticed in the PSR that he indicated that

23   that started sometime in 2016, slash, 2017, and yet he began

24   making his initial claims that he had cancer to the Santander

25   Bank officials in the latter part of 2015.  The woman he was

1    dating at that time, Heike Busby, later, again, living with him

2    in March of 2016, reported that he never mentioned anything

3    about having cancer to her until around the end of 2016, when

4    he claimed that he was taking chemotherapy tablets.  So I think

5    we simply do not have information that would support a downward

6    variance on that ground.

7              The Defense has also raised the issue of good works

8    and charitable contributions by the Defendant.  They did not

9    seem to have any --

10             **THE COURT:**  I do recall that, in the evidence in this

11   case, Government Exhibit 73, according to my notes, at the

12   exact time that the Defendant represented that he was receiving

13   cancer treatment, the Government introduced evidence reflected

14   by Government Exhibit 73 that, that same time, he was flying to

15   Mexico for some type of vacation.

16             **MR. GRAY:**  Yes, I believe he was.

17             **THE COURT:**  I know that that evidence was presented

18   at trial, and it was discussed in closing argument according to

19   my notes.

20             **MR. GRAY:**  As I recall, I believe he sent one e-mail

21   from Cabo San Lucas, in which he indicated that he was

22   recovering from cancer therapy.  Literally, it would have been

23   sent from his villa, or whatever it was, in Cabo San Lucas.

24             Now, the Defense has raised these issues about his

25   charitable contributions, so I asked our very hard-working

1   agent, Mr. Rutledge, if he would do a rundown of covering the

2   period from 2010, what are the charitable contributions that he

3   could identify.  I'm going to tender this to --

4       **THE COURT:**  This will be Government Exhibit 2.

5       **MR. GRAY:**  Well, let me call this Government

6   Exhibit 3, because I've already got something --

7       **THE COURT:**  What was Government Exhibit 2?

8       **MR. GRAY:**  Government Exhibit 2, I'll bring up in a

9   moment.  I'll circle back.

10      **THE COURT:**  All right.  Okay.

11      (Document tendered to the Court.)

12      **MR. GRAY:**  And, as you'll see there, Your Honor, our

13  analysis indicates that there is a total of about $300,000

14  worth of what could be considered charitable contributions over

15  a period of six years from 2010 to 2015.  The majority of them,

16  certainly the bigger ones, all come out of the business

17  account, Gaver Technologies, Inc., into which of course the

18  money from the line of credit that was being obtained by

19  fraudulent means freely flowed.

20      **THE COURT:**  This does not reflect any charitable

21  donations to Hood College here.  As I understand, he was

22  chairman of the Board of Trustees of Hood College in Frederick

23  at one time.

24      **MR. GRAY:**  That's correct.  Back in -- originally, he

25  became -- back in 2009, I think it was initially supposed to be

1    for an 18-year term.  I don't know if it continued after that,

2    but our detailed analysis of the finances commenced January the

3    1st of 2010, so if there were any while he was the chairman of

4    the Board of Hood College, but perhaps not after January 1st of

5    2010, then it would not be reflected.

6                **THE COURT:**  Okay.

7                **MR. GRAY:**  So that may be the reason for that.

8                But obviously our contention is that, especially the

9    ones that come straight out of the business account are almost

10   certainly coming from commingled funds that involve fraud

11   proceeds.  The Defendant spent, according to Mr. Rutledge's

12   analysis, something like 15 million on personal uses of the

13   money that came in from Santander Bank from 2009 through to the

14   end of the fraud scheme.  And it's easy, if you are stealing as

15   much as $15 million just for personal purposes over a period of

16   some five years, to give some amount of that to charity.  So I

17   don't think, under these circumstances, that's really entitled

18   to any significant consideration.

19               I'd now like to give the Court what I've marked as

20   Government Exhibit 2.  You can think of this really as being a

21   supplement to Government Exhibit 1 to the sentencing memoranda.

22   This was a text message that unfortunately, when I was putting

23   together the sentencing memorandum, I had focused mostly on the

24   e-mails, and I had missed this one text, but it is significant.

25               (Document tendered to the Court.)

1          **THE COURT:**  Thank you very much, Mr. Gray.  Thank

2      you.

3          **MR. GRAY:**  As you'll see, this is a text message that

4      was sent from the Defendant's daughter, Samantha Gaver, to her

5      mother, the former Mrs. Gaver.  We don't have the date of it --

6      it's not reflected on here -- but it indicates the following:

7      "WTF.  I just got this text from Dad.  Sam, tell you mom that

8      Herman --" that would be Mr. Tarnow, the counsel -- the divorce

9      counsel for Mrs. Gaver "-- that Herman is gone, and she is

10     next."

11         I made reference a few minutes ago to what I

12     described as the campaign of essentially emotional terrorism

13     that the Defendant conducted from 2'16 well into the middle of

14     2017 against his former wife and Mr. Tarnow because of the

15     divorce action and they're pursuing -- trying to pursue --

16     their legitimate inquiries about his assets resulted in the

17     long overdue exposure of this scheme.

18         And so, now, to my more general remarks in relation

19     to the Defendant's crime and the appropriate sentence in this

20     case.  This is obviously an extraordinarily serious financial

21     crime involving a loss of approximately $50 million.  I have

22     reviewed sort of -- and, as Your Honor knows, I've been with

23     our office for many years.  I have reviewed and have made

24     inquiries to others in our offices to the number of other cases

25     that our office has that involve losses in the $50 million

1   range or above, and we are seeing more large dollar loss cases

2   these days, but I still believe there are probably no more than

3   ten cases that our office has handled within anyone's current

4   memory that involve losses of $50 million or above, so this is

5   an extremely large and unusual case from --

6       **THE COURT:**  One of them was my case involving an

7   individual named David Robinson.

8       **MR. GRAY:**  Actually, the *Robinson* case involved

9   significantly lower losses, but of course he had an extended

10  criminal history -- criminal record and received a very, I

11  think, appropriately substantial sentence because of that.

12      But there are two other aspects of the Defendant's

13  crime that I find particularly troubling.  One of them -- and

14  it was highlighted by many of the exhibits that we included

15  with our sentencing memo.  I mean, it's the way that the

16  Defendant, you know, like a much smaller-scale version of

17  Bernard Madoff, sort of took advantage of the perception of his

18  success to assume all of these prominent positions and

19  leadership positions in his community in Frederick.  And so,

20  when his fall came about and it was revealed that, for years,

21  this had all just been based upon fraud, I mean, that

22  necessarily had to do damage to these institutions as well.

23      And that -- I mean, you know, what happened with, you

24  know, Hood College discovering that its former chairman of its

25  Board of Trustees was just a fraud artist, I mean, that has a

1    terrible impact on an institution like that.  Or, you know, the

2    City of Frederick, when it discovers that the man that it

3    appointed to head its downtown convention center/hotel

4    redevelopment project was just a fraudster all the way along, I

5    mean, that's additional collateral damage that resulted from

6    his crimes that is extremely troubling.

7            And, although the victim here is Santander Bank, that

8    doesn't mean that individuals were not victimized by what the

9    Defendant did as well, and those victims fall into a number of

10   different categories.

11           I mean, there are the bankers at Santander who

12   thought they were working with a very hard-working, successful,

13   diligent, conscientious businessman to make his business a

14   success and who was, if you look at some of those e-mails back

15   and forth between Mr. Postupak and Mr. Gaver in the 2015 time

16   period that were included in our exhibits, I mean, you see the

17   level of detail that they gave to crunching the numbers, and

18   they would sometimes identify discrepancies, and they would ask

19   him about those, and he would always come up with persuasive

20   explanation.

21           And, in the end, three Santander employees -- they

22   were Mr. Postupak -- I think actually Mr. Fred Siglin and I

23   believe a woman named Amy Lindsay lost their jobs when this was

24   all exposed.  And my understanding is that it may be that

25   actually -- if I mistakenly said in the exhibit, in the

1   sentencing memo, that it was Paul Phillips, not Fred Siglin,

2   but I'm not entirely sure that Mr. Siglin or Mr. Lindsay have

3   ever returned to the workforce.

4          And then of course there was the damage to the people

5   like Kelli Gray and Jeff Arendt, who had worked for his company

6   and who tried to make it a legitimate success.

7          And, as I noted, the claims that were advanced by the

8   Defense at trial, which were reported in the *Frederick News*

9   *Post*, you know, certainly, I'm sure have caused significant

10  embarrassment and anguish to Mr. Arendt that, when he was

11  actually staying there, tending the store, doing the day-to-day

12  work, keeping the company running, and then, at the end, to

13  have the finger pointed at him as if he engineered this entire

14  thing.

15         Based upon all of these facts, this clearly is an

16  aggravated fraud case.  It is a case that is in the upper end

17  of the range in terms of the spread between 25 and $65 million

18  in losses.  It is a case where there is a great need for

19  substantial deterrence.  The Defendant has shown no indication

20  of remorse or contrition or acceptance of responsibility of any

21  kind.  And, for all of those reasons, we submit that a sentence

22  of 210 months' incarceration is appropriate here.

23         **THE COURT:**  All right.  Thank you very much,

24  Mr. Gray.

25         And, with that, I'd be glad to hear from you,

1    Mr. Levin, and I have read your sentencing memorandum, Paper

2    Number 98, that was filed on December 7th.  I'd be glad to hear

3    from you.

4          **MR. LEVIN:**  Thank you, Your Honor.

5          Your Honor, it's a very tough day today, certainly

6    for Your Honor, I think you would agree, because I think I've

7    heard you say it before that sentencing is one of the most

8    difficult aspects of your job.

9          It's a tough day for Mr. Gaver.  He -- and let me

10   just say initially, Your Honor, that his snarky outburst

11   earlier, he immediately regretted it.  He wrote me a note.  He

12   would like the Court to know he immediately regretted it.

13         **THE COURT:**  That's fine.  I don't hold it against

14   him.  That's fine.

15         **MR. LEVIN:**  And --

16         **THE COURT:**  He's perfectly well-behaved, and we're

17   fine, and I just demand respect for the Court, and that's fine.

18   There is no problem.  I understand.

19         **MR. LEVIN:**  And it's maybe even more difficult, Your

20   Honor -- if you look around this room, who is here for

21   Mr. Gaver other than me?  There is no one.  He has no one who

22   could write a letter.  Because of that divorce, that bitter

23   divorce, which Your Honor knows about better than I do, because

24   I didn't have the privilege of sitting in at trial --

25         **THE COURT:**  Suffice it to say that his divorce proved

1    to very expensive for him --

2              **MR. LEVIN:**  Indeed.

3              **THE COURT:**  -- in more ways than one.

4              **MR. LEVIN:**  So there is no one here today.  And the

5    point of that, Your Honor, for the next however many years he

6    serves, wherever he serves those years, no one will visit.  No

7    one will communicate with him, at least in a positive manner.

8    Certainly there are some distinguished members of the Bar here

9    who represent banks, and they'll be in touch with him perhaps.

10   His legal proceedings haven't ended with this.  So that

11   continues.

12             But, Your Honor, it's not as though he's someone who

13   will have the benefit of keeping in touch with loved ones for

14   the next several years.  And, when he gets out, if he gets out,

15   if he manages to survive in prison however many years, he'll

16   have no one to go back to.

17             And so I would ask that Your Honor consider that is

18   an aspect of prison that's made more harsh for him than perhaps

19   many others that come before this Court.

20             **THE COURT:**  The presentence report reflects that he

21   could not remember the names of children from Ms. Swillo.

22             **MR. LEVIN:**  Your Honor, I think that's part of his

23   mental health challenges.  And part of the reason we're here 30

24   days or so after my appointment, Your Honor, is because

25   Mr. Gaver wants to be designated to a BOP facility, wants to

1    get the help for his mental health issues and physical issues

2    that he has as quickly as possible.

3            And so --

4        **THE COURT:**  Do you believe that a facility such as

5    Fort Devens, Massachusetts or Butner, North Carolina is

6    appropriate?

7        **MR. LEVIN:**  I do, Your Honor.  I certainly do.

8        **THE COURT:**  Does the Government have any objection to

9    that, Mr. Gray?

10       **MR. GRAY:**  We do not, Your Honor.

11       **THE COURT:**  I mean, I would think that, in light of

12   that, that Butner, North Carolina, is a full-fledged prison

13   facilities, but also has excellent mental health care.  I would

14   think that's where he should go.  Do you have any problem with

15   that?  I think that's probably the case, correct, Mr. Levin?

16       **MR. LEVIN:**  Oh, absolutely, Your Honor.

17       **THE COURT:**  Okay.

18       **MR. LEVIN:**  And let me just bring this up now since

19   we're talking about Fort -- Camp Butner.

20       **THE COURT:**  Well, I didn't say I was going to

21   recommend a minimum male camp, but I'm going to recommend

22   FCI Butner, North Carolina, and they'll decide where to put him

23   if he goes there.

24       **MR. LEVIN:**  Thank you, Your Honor.  It's that

25   military part of me talking.

1          THE COURT:  That's all right.

2          MR. LEVIN:  I think of fort first.  You know, I

3     didn't want there to be a comparison, although there was one.

4          THE COURT:  I didn't know Butner was a military camp,

5     Mr. Levin.

6          MR. LEVIN:  Camps are now forts.

7          THE COURT:  That's all right.  We're not going to

8     send him to Fort Bragg, I guarantee you.

9          MR. LEVIN:  Don't do that.

10          THE COURT:  That's right.

11          MR. LEVIN:  I don't want there to be a comparison,

12     though we just heard one, to Bernie Madoff.  Bernie Madoff

13     stole millions and millions of dollars from thousands and

14     thousands of people and took their retirement.

15          THE COURT:  Last time I heard, I think Madoff was at

16     Butner, North Carolina.

17          MR. LEVIN:  Well, that's why I'm bringing this up

18     now, Your Honor, because I think that's where the comparison

19     should end, because this is not -- Mr. Gaver is not the

20     Bernie Madoff of Maryland.  And I'm beginning to hear from a

21     number of prosecutors that they're prosecuting someone they

22     call the Bernie Madoff of Maryland.  I think Kevin Merrill was

23     in a different courtroom --

24          THE COURT:  Mr. Merrill is the case that's assigned

25     to me that's pending trial in June.

1          **MR. LEVIN:**  So Your Honor is probably familiar with

2     that.

3          So, while Mr. Gaver's crimes for which he was

4     convicted are indeed serious -- there is no question about

5     that, Your Honor, but, if Your Honor were to sentence Mr. Gaver

6     purely on the counts of conviction, it wouldn't be such a

7     difficult job, but you have to consider and you do consider the

8     person who appears before you, not just the actions that the

9     jury found he committed.

10         So, with that in mind, Your Honor, I do find

11    interesting that the Government would say, "Well, it's easy to

12    give away money that's not yours."  Well, Your Honor, it's

13    easier not to give it away.

14         Over the years, Mr. Gaver gave a considerable amount

15    of money to charity.  He didn't have to do that.  In fact, if

16    anything, that would bring attention to himself that could lead

17    to exactly where we are today.  If he had just held onto the

18    money and not given it away for good causes, then perhaps he

19    would have been protecting himself, but that wasn't what he

20    chose to do, and I said in my sentencing memo I would elaborate

21    on the contributions he's made.

22         To Christ -- Reformed United Church of Christ, over a

23    25-year period, Your Honor, Mr. Gaver donated over $100,000.

24         Frederick Memorial Hospital, between the years 2002

25    to 2015, he gave over $115,000.

1       Hood College, brought up earlier, he gave over

2   $20,000.

3       Frederick Community College, he contributed to a

4   scholarship fund, $12,500.

5       To Middletown High School sports boosters, over

6   $350,000.

7       Bridgewater College received in excess of $50,000.

8       Alzheimer's Association, over $50,000.

9       The Shadow Wood Community Foundation, which he

10  supported annually, he gave over $20,000.

11      The Holocaust Museum of Naples, Florida, he gave

12  $8,000 during a live auction.

13      The Kiwanis Club, over $2,500.

14      And he gave computers and technical support to the

15  Middletown High School Technology Department.

16      Your Honor, he's held some positions in prestigious

17  clubs over the years -- the Rotary Club of Frederick; Suburban

18  Frederick Club; again, Christ Reformed United Church of Christ,

19  he served as a deacon, elder, president of the congregation.

20  He was a trustee with the Frederick Chamber of Commerce.  He

21  was a chairman of the Frederick County Public Schools

22  Technology Advisory Committee.  And Your Honor mentioned the

23  position he held as a trustee for Hood College.  He's a 2006

24  graduate of the Leadership Maryland Program.

25      And there is more, Your Honor.  That's listed in the

1  sentencing memo.  The point is, Your Honor:  He didn't have to.

2  It would have been easier not to, but he chose to contribute

3  money and his time to these organizations.  And that should be

4  factored into an appropriate sentence for Mr. Gaver, and I know

5  Your Honor will consider it.

6         The Government says this calls for a substantial

7  period of confinement.  Your Honor, just last week, we heard

8  the United States Department of Justice ask, in another case up

9  in the Southern District of New York, for that defendant, a

10  substantial term.  That office considered three years

11  substantial.  So at least we have part of the Department of

12  Justice recognizing that three years -- might have been four

13  years -- is a substantial term of imprisonment.  So, going

14  above that, Your Honor, the guidelines -- the low end of the

15  guidelines, that is a very substantial period of confinement.

16         Mr. Gaver, to look at him, you would not guess he's

17  57 years old.  I was shocked.  I only knew of Mr. Gaver from

18  looking at the articles before I went to visit him, and I was

19  struck by the change in appearance.  I don't know how he looked

20  during trial, but he certainly has aged considerably since the

21  pictures in the paper were taken, and his time at CDF certainly

22  has not, in any way, benefitted him, which is part of the

23  reason he wants to be designated as soon as possible.

24         Now, while Your Honor has consistently declined to

25  provide or give a variance because of conditions at CDF, I

1    think I heard you correctly that you'll consider the conditions

2    when determining where within the guidelines range.  Maybe I

3    misunderstood Your Honor, but at least that's what I took from

4    your comment to Mr. Gray.

5            With that said, I feel it's necessary to at least

6    point out that there is a big difference between oversight and

7    review and hands-on experience.  Mr. Gaver has lived that

8    experience for about a year now.  He has seen the cockroaches.

9    He has seen the mice in his living quarters, a 78-square-foot

10   cell designed for one person that he shares with another.

11           He's been there when the dishwashers have been not

12   working for several months, and he has eaten in his cell,

13   sitting next to a commode, rather than going to the kitchen or

14   cafeteria because he's been eating on paper plates or plastic

15   plates in his cell.

16           Notwithstanding the fact that the QAR suggests the

17   noise level is appropriate, it's hard to tell someone who lives

18   there every day and has lived there for about a year that, at

19   4:00 a.m., it's appropriate that he hears people yelling and

20   screaming at the top of their lungs, which is the experience

21   Mr. Gaver has had.

22           So I hope Your Honor will consider the fact that

23   there is a big difference between a report and an actual

24   experience, or several experiences.

25           There is a reference in opposing counsel's sentencing

1  memo about good-time credit and that I believe they're asking

2  for -- and I know Mr. Gray will correct me if I'm wrong.  I

3  think he's asking for about 17 and a half years because, with

4  good-time credit, that comes down to maybe 15 years.

5         Well, I don't think that's appropriate, Your Honor.

6  I think the sentence should be what the Government thinks

7  Mr. Gaver should serve, because it's not a guarantee that he'll

8  get good-time credit.  It's hopeful.

9         **THE COURT:**  I never consider the amount of good-time

10  credit when I impose a sentence, because I have no idea what

11  the Bureau of Prisons is going to do.

12         **MR. LEVIN:**  Well, and that's why we're asking, if the

13  Government thinks 15 years is the appropriate sentence, they

14  should ask for 15 years, not 17 and a half minus the good-time

15  credit, which results in 15 years.

16         Your Honor, I'm concerned about the text message that

17  was just provided to the Court.  I will say this:  I have to at

18  least object to consideration, because I don't know if that's

19  an accurate text message.  I don't know if the writer is

20  accurately capturing what Mr. Gaver said to her.  I don't know.

21  I don't know what --

22         **THE COURT:**  Well, apart from that, we already have

23  Exhibit 1 in the Government's submission in which essentially

24  Page 2 of a 12-page document here, Paper Number 99,

25  specifically notes that there is a reference to:  "You have

1    once again pushed me too far, Mr. Tarnow, and your client will

2    pay the price."

3         There is, referenced in Paragraph 9 -- I mean, in

4    Exhibit 9 of the Government's submission with respect to:

5    "There is danger ahead for those who have wronged me.  You must

6    warn them."  Your client has certainly had a tendency --

7    another reference to third parties I can no longer control.

8    Your client has certainly had a tendency to perhaps have

9    outbursts, let us say.  To be civil about this, he's been known

10   and prone to have outbursts.  As to what they mean one way or

11   the other, it's not particularly crucial.  The fact is that

12   they have an impact on people.

13        So I think that's the thrust of it.  I don't need to

14   go into the bona fides one way or the other of the text message

15   that his daughter, nicknamed Sam, I believe, transmitted, but

16   it's clear that he -- you know, he tends to pop off, let's say,

17   to put it mildly.  I don't hold that against him, but, I mean,

18   the fact of the matter is that that frightens people,

19   Mr. Levin.  That's the point.

20        **MR. LEVIN:**  Well, and that brings us right back to

21   the mental health challenges that he faces.

22        **THE COURT:**  I have no question about it.  No

23   question.

24        **MR. LEVIN:**  So I --

25        **THE COURT:**  He's definitely going to need mental

1    health treatment, and I'm going to recommend that he go to

2    Butner because of that.  I've actually visited the Butner

3    facility, and I think that's where he should go.  I think it's

4    where he'll get his best care.

5            MR. LEVIN:  Your Honor, I have advised Mr. Gaver --

6    in light of the fact that he went to trial in this case and I

7    intend to file a notice of appeal on his behalf, I have advised

8    him not to address the Court.

9            THE COURT:  That's fine.  Just as long as I know he

10   understands that.

11           I personally address you, Mr. Gaver, and determine if

12   you wish to make a statement and give you the opportunity to

13   speak on your own behalf.  Do you understand that you have that

14   right?

15           THE DEFENDANT:  Yes, sir, I do, and I would like to

16   make a statement.

17           THE COURT:  Well, why don't you talk to your

18   attorney, Mr. Levin, again, before you --

19           THE DEFENDANT:  I don't think that's necessary, Your

20   Honor, but I thank you for that.

21           THE COURT:  I'm not going to hold it against you if

22   you don't make a statement.

23           THE DEFENDANT:  I understand, sir.

24           THE COURT:  Yes, Mr. Gray?

25           MR. GRAY:  Your Honor, just we should afford an

1   opportunity to Mr. Ulwick, who is here on behalf of Santander

2   Bank --

3           **THE COURT:**  I beg your pardon?

4           **MR. GRAY:**  If Mr. Ulwick, on behalf of Santander

5   Bank, wishes to address the Court on behalf of the bank.

6           **THE COURT:**  That's fine.  That's fine.  On the

7   restitution issue, that's fine.  Mr. Ulwick, I'd be glad to

8   hear from you.  Mr. Ulwick is well-known to the Court.

9           If you'll just come around to the podium over here.

10  Mr. Ulwick, as Mr. Levin, is a former Assistant United States

11  Attorney for this district, and I'd be glad to hear from you,

12  Mr. Ulwick.

13          **MR. ULWICK:**  Thank you, Your Honor.  I appreciate it.

14  I will be very brief.

15          It's my privilege to represent Santander Bank, and,

16  as you know, they are the victim of this particularly very

17  large crime.  As the Court knows from my letter of October 2,

18  2018 -- and I appreciate the Court referring to that during the

19  course of the proceedings today -- Santander Bank issued a line

20  of credit to Mr. Gaver of $50 million.

21          **THE COURT:**  And, just for the record, Mr. Ulwick,

22  according to my notes, I believe that is Paper Number 73 as a

23  matter of record in this case, and I assume the entire packet

24  was included in that.  I haven't downloaded it, but I assume

25  that's all part of exhibits that --

1          **MR. ULWICK:**  That's what we tried to do.

2          **THE COURT:**  Madam Clerk, just make sure that --

3   that's a document with some series of exhibits --

4          **THE CLERK:**  Yes.

5          **THE COURT:**  -- and just verify that that, as far as

6   I'm concerned, is part of the record in this case and is Paper

7   Number 73.

8          **THE CLERK:**  They are 41 pages.

9          **THE COURT:**  Okay.  I think that probably should have

10  it right.

11         **THE CLERK:**  In Exhibit A.

12         **THE COURT:**  For example, Madam Clerk, it includes --

13  noting here, for example, it includes a declaration of

14  Brett Bokelkamp, and all that material has been included, I

15  think, Mr. Ulwick, so --

16         **MR. ULWICK:**  Thank you very much, Your Honor.

17         So, in light of that, I would just conclude by

18  respectfully requesting that the Court order restitution to

19  Santander Bank in the amount of $48,774,308.75, and, unless the

20  Court has any questions --

21         **THE COURT:**  No, that's fine.  I will make that note.

22         **MR. ULWICK:**  Thank you very much, Your Honor.

23         **THE COURT:**  Thank you very much.  And there will be

24  restitution, Madam Clerk, ordered in the amount of

25  $48,774,308.75.  Monthly payments will be in accordance with

```
1    the instructions of the probation officer.  I'm not going to

2    try to calculate how he's going to pay it out on a monthly

3    basis over a period of three years.

4             THE CLERK:  Okay.

5             THE COURT:  It becomes an issue of the Financial

6    Litigation Unit of the U.S. Attorney's Office when the time

7    comes.

8             So, with that, Mr. Gaver, have you had a chance to

9    talk to Mr. Levin?

10            THE DEFENDANT:  Yes, sir, I have.

11            THE COURT:  All right.  And you discussed with

12   Mr. Levin, and, again, I'm not going to hold it against you.

13   You don't need to make a statement.  I'm not making you make a

14   statement.  The facts of this case are pretty clear to me,

15   quite frankly, but, if you'd like to make a statement, you can.

16            Do you understand he has advised you not to in light

17   of the fact that either he or another lawyer will be filing an

18   appeal in this case?

19            So, Mr. Levin, what are the wishes of your client now

20   on that?

21            MR. LEVIN:  Mr. Gaver wishes to address the Court.

22            THE COURT:  All right.  That's fine.

23            I'd be glad to hear from you, Mr. Gaver.  You may

24   remain seated if you want if you're having difficulty

25   physically.  You may remain seated.
```

1          THE DEFENDANT:   Thank you, sir.

2          I just want to thank the Court and apologize to the

3     Court for my earlier outburst.

4          THE COURT:   That's all right.   I don't hold it

5     against you.   That's fine.

6          THE DEFENDANT:   I apologize to the Court for the

7     lengthy trial.

8          THE COURT:   You don't have to apologize for the

9     length of trial.   You're entitled to a trial.

10          THE DEFENDANT:   And, you know, I'm still stunned by

11     all of this.   Anyway, I want to thank Your Honor for your

12     diligence, and I've never felt that you were one-sided in this

13     at all, and really felt that I got a just and fair shake in

14     your courtroom, and I thank you for that.

15          And that's all I have to say, sir.

16          THE COURT:   All right.   Thank you, Mr. Gaver.   That's

17     my job, and I make every effort to have that approach in any

18     case before me, and you don't need to apologize for going to

19     trial.   You have every right to go to trial.   And you had a

20     fair trial as far as I'm concerned, and the jury returned a

21     verdict.

22          But, having said that, I will tell you that the

23     verdict was a just verdict.   The evidence in this case was

24     overwhelming, and I've conducted the analysis as outlined in

25     the *Booker* and *Gall* cases to determine if a sentence within the

1    advisory guideline range, which here is 188 to 235 months,

2    whether or not a sentence within that range serves the factors

3    as set forth under 18 United States Code § 3553(a).

4         When I look at those factors, I look first at the

5    nature and circumstances of the offense and the history and

6    characteristics of the Defendant, and the nature and

7    circumstances of this offense are extraordinarily egregious.

8         I think that this might be one of the largest fraud

9    cases that I think has ever been presented in this district in

10   terms of the amount of money involved, and I have actually

11   thought over my past career experience, both the

12   U.S. Attorney's Office twice, and then representing defendants

13   charged with white-collar criminal offenses when I was in

14   private practice, and now 15 and a half years on the bench,

15   Mr. Gaver, I will tell you that I don't ever recall -- I'm hard

16   pressed to find another case that involved over $50 million.  I

17   mean, it's literally $49.7 million that went out the window.

18   It is an extraordinary amount of money, and the restitution

19   figure here -- and it's documented to the penny -- is almost

20   $49 million.

21        And, in terms of your personal history and

22   characteristics, I have considered the position you occupied in

23   the community in Frederick, Maryland and in Collier County,

24   Florida, down in Naples and Bonita Springs, and the fact of the

25   matter is your life became a complete fraud, and you need to

 1     deal with that, and you do need mental health counseling,

 2     because every minute of your existence was a complete fraud.

 3          And Mr. Levin suggests that you didn't have to make

 4     those contributions.  My view is it became part of your fraud,

 5     to try to present somebody that you were not, and it got bigger

 6     and bigger and bigger, and, by the time you're finished, you're

 7     chairman of the Board of a highly-respected college, the Board

 8     of Trustees.  You're given all kinds of money.

 9          And Mr. Levin is correct that everyone talks these

10     days about Bernie Madoff, but anyone familiar with that case

11     knows the level and depth of fraud and identity issues that one

12     has to go through to have that level of fraud, and your entire

13     life was a fraud.

14          And, in terms of looking under factors under

15     § 3553(a)(6) with respect to avoiding unwarranted disparities

16     with individuals with similar records, I noted in Mr. Gray's

17     very thorough submission that one of the cases he cited here

18     with respect to prior sentences was a case I had involving

19     Mr. David Robinson, Case Number 07-087.

20          As I recall that case, I think Mr. Robinson was a

21     graduate of -- I could be wrong -- I think a very prestigious

22     private school in this area, a very prestigious university.  He

23     was a practicing lawyer, and his whole life was a fraud, and he

24     was sentenced to 15 and a half years in prison.  And the fraud

25     was in the area of $2.5 million, which pales in comparison --

1    pales in comparison to the fraud that you perpetrated upon the

2    citizens of this community, and I do think Mr. Gray's point is

3    well taken as to the harm that's been done to those who engaged

4    with you.

5            With respect to Mr. Levin's arguments as to the

6    conditions at CDF, I'm well aware of those.  I certainly do

7    factor it in, because, quite frankly, I was surprised the

8    guidelines in your case -- quite frankly, Mr. Gaver, I was

9    surprised the guidelines weren't higher, quite frankly.  I

10   expected these guidelines to be 25 or 30 years, and they

11   weren't, but I thought they'd be much higher.  So the matter of

12   conditions at CDF and the matter of charity to others, I'm

13   afraid, falls on deaf ears here with this particular judge.

14           As to the mental health and physical health issues, I

15   do hear those.  I am going to recommend you go to Butner, North

16   Carolina, because I think the depth of this fraud became very,

17   very deep psychologically in terms of the level of fraud, and

18   it went on and on, and I, quite frankly, wonder, but for the

19   matter of the divorce proceedings and your wife trying to find

20   out where all your assets were, finds out that all the assets

21   are fraudulent, this fraud could have gone on and on.  I don't

22   know where it would have stopped.

23           In all candor, with all due respect to Mr. Ulwick's

24   client, Santander Bank, that bought a lot of this paper from

25   another bank, this whole thing was triggered over divorce

 1    proceedings.  So, if there is ever anybody that paid the price

 2    for an expensive divorce, it certainly is you.  I have some

 3    doubts as to when this would have ever been discovered.

 4          So, when you look at all those factors, a severe

 5    sentence is required here, and I look at the purposes to be

 6    achieved by sentencing, and the United States Court of Appeals

 7    for the Fourth Circuit, in the *Raby* case, 575 F.3d 376, a

 8    Fourth Circuit opinion in 2009, noted that the sentence imposed

 9    should achieve the four Congressionally-mandated purposes of

10    sentencing as set forth in 18 United States Code § 3553(a)(2);

11    that is, to punish you -- you certainly have been punished, and

12    there is more punishment coming; to deter you and others from

13    criminal conduct, and I do think that there is an important

14    deterrence for others as to this, because many of these

15    financial fraud cases involving the person who hits the fork in

16    the road and, as opposed to dealing with the level of their

17    fraud, they just go deeper into the fraud until it just

18    consumes them -- at some point in time, Mr. Gaver, you hit the

19    fork in the road, and you had a choice between trying to reveal

20    that your life was a fraud, the money was a fraud, and dealing

21    with it or keep going, and you got deeper and deeper and deeper

22    into this fraudulent activity.  I do think there is a need to

23    protect the public, as the Fourth Circuit mentioned.

24          But, to achieve these four purposes, I look to all

25    the factors under 18 United States Code § 3553.  I don't

```
 1        presume that the guideline range is reasonable.  It is mandated
 2        by Gall and, as mandated by the Gall case, I do make an
 3        individualized assessment with respect to the facts here, but
 4        the facts are here that this was an extraordinary level of
 5        fraud.
 6                And I must tell you, Mr. Gaver, that I am driven by
 7        the fact that we live in a culture and we live in a world in
 8        which we have an extraordinary number of young men brought into
 9        this courthouse, extraordinary number of young men who are
10        addicted to drugs, and they're out dealing in drugs, and the
11        sentences that go out of this Court with respect to some of
12        those young men who, if they're 30, they're old by comparative
13        standards -- we're talking about 15-year mandatory minimum
14        sentences to a young man who has got a gun and has a record and
15        the number of times a young man has looked up at me and said,
16        "Judge, I just have a gun because I need the gun in my
17        neighborhood, because the police won't even come into my
18        neighborhood anymore."
19                And you're sitting in a federal court that is in the
20        hub of the most violent city in the United States.  The city of
21        Baltimore is a poster child for a situation totally out of
22        control, and we are definitely not incarcerating our way out of
23        that.  And, when I think of white-collar criminal cases and the
24        amount of money involved here and I think of the number of
25        young men who have come in here and got 15-, 20-, 25-year
```

1    sentences, and many of them have been driven by addiction and

2    been living on the streets in this city and been on their own

3    since they were 17, the message has to go out to the public

4    that white-collar criminal defendants can be treated as

5    severely as some of those for those kinds of crimes as a matter

6    of fairness, and, indeed, the entire system becomes subject to

7    question when people say, "Really, I need mental health.  I

8    need help.  My -- CDF was a tough situation."

9         There are people over there where you've been living

10   at the Chesapeake Detention Facility, Mr. Gaver, that lived

11   that kind of life their whole lives, even if they're not at

12   CDF.  That's the kind of home they live in.  And a severe

13   sentence is demanded here.

14        And I've taken into account what I feel are your

15   mental health issues, but all of those factors compel me to

16   believe that a sentence certainly within the guideline range is

17   appropriate.  Many times, we criticize the guidelines here, and

18   I don't presume that they're accurate, but, in this case,

19   they're based upon nationwide studies in terms of the amount of

20   the loss, trying to have what federal judges do in Baltimore,

21   as bad an environment as we have here, that it be somewhat

22   consistent with Chicago and Los Angeles.  There is a reason for

23   those guidelines, and, in this case, they're very helpful.

24   And, considering all those facts, there is no question that it

25   should be at the higher end, or certainly in the mid range of

1    these guidelines, and not at the lower end.  Not at the lower

2    end.

3           For those reasons, it is ordered that you be remanded

4    for a total period of 204 months, or 17 years.  Specifically,

5    it is ordered that you be remanded to the custody of the Bureau

6    of Prisons for a period of 204 months on Counts 1 through 8 on

7    each one of those counts, all of those sentences to be

8    concurrent to one another; that you be remanded to the custody

9    of the Bureau of Prisons for 120 months on Count 9, and 120

10   months on Count 10, to be concurrent with one another and

11   concurrent with all the other charges, for a total sentence of

12   204 months, which is 17 years, with credit for time served in

13   federal custody since November 15, 2017, when you were first

14   taken into custody in Florida, so that translates out that

15   you've already served one year of the 17-year sentence.

16          I'm going to recommend that you get psychological

17   counseling and mental health treatment at the facility where

18   I'm going to recommend you go, and I'm going to make sure,

19   Madam Clerk, that it's indicated that -- it's very important

20   here that he go to FCI Butner, North Carolina, and

21   alternatively, if not Butner, North Carolina, that he go to

22   Fort Devens, Massachusetts.  I believe they are the two best

23   facilities here on the East Coast with respect to addressing

24   those kinds of psychological issues.

25          Now, you have been found guilty by a jury of fraud

1    and money laundering in a scheme that spanned at least eight

2    years and involved nearly $50 million, and you not only

3    defrauded the bank; you lied to yourself, you lied to your

4    family, and you lied to the whole community, and your entire

5    life was a lie for decades, and you have left a path of

6    destruction in your wake that included at times, perhaps out of

7    panic, indirect threats to your wife's attorney and threats to

8    your wife, but I'm not really holding those against you, quite

9    frankly, because I think that was a product of a mental

10   unravelling when your whole world started to come crashing

11   down.  To say that you were living beyond your means was an

12   understatement.  You were living a total lie for a long period

13   of time, and I am going to recommend that you get psychological

14   counseling and mental health treatment.

15             I'm going to place you on supervised release for a

16   period of three years as to Counts 1 through 8 and three years

17   as to Counts 9 through 10.  All of those terms shall be

18   concurrent for a total period of supervised release of three

19   years.  I'm going to order, as a matter of supervised release,

20   restitution in the amount of -- restitution paid to the

21   Santander Bank in the amount of 48,774 -- let me start again.

22   The figure is so large, it's hard to verbalize it.

23   48,774,308.75.  $48,774,308.75.

24             The restitution shall be paid during any period --

25   I'm not going to waive payment under the prison system.

1    Restitution may be paid immediately, and, to the extent he's

2    able to under the prison system -- and, Ms. Swillo, if you'll

3    remain afterwards just for a few minutes to get the wording of

4    that correct with respect to Ms. Tyson.  You know of what I've

5    speaking, that there is a --

6            **PROBATION OFFICER:**  Yes, Your Honor.

7            **THE COURT:**  A form to which any money he's received

8    while in prison can at least be applied towards restitution,

9    and restitution shall be -- thank you, Ms. Swillo.

10           Restitution can be continued during the period of

11   supervised release.

12           I'm going to also recommend that you participate in

13   any mental -- this is during the period of supervised

14   release -- that you participate in any mental health treatment

15   program as deemed necessary by the probation officer, that you

16   take all mental health medications that are prescribed to you

17   by any treating physicians, that you submit to substance abuse

18   testing as well as participate in a substance abuse treatment

19   program.  Also, that you not incur any new credit charges or

20   open any lines of credit without the approval of the probation

21   officer.

22           I am not going to include the suggested term that you

23   not use or possess alcohol during the period of supervised

24   release.  That's not really for me to judge in terms of any

25   substance abuse.  That will be determined, and, if the

1    probation officer feels that's an issue, he or she will so

2    indicate.

3             I am not going to impose a fine in this case because

4    you're not able to pay a fine.  All the money needs to go

5    towards restitution.

6             There is a special assessment of $100 per count for a

7    thousand dollars.  That will be listed as being paid

8    immediately, Madam Clerk.

9             **THE CLERK:**  Yes.

10            **THE COURT:**  And it will be deducted from your prison

11   wages.

12            I want to advise you of your appeal rights here,

13   Mr. Gaver.  You should note an appeal within 14 days of the

14   entry of the Judgment and Commitment Order in this case, which

15   will probably be entered tomorrow morning.

16            Pursuant to Rule 4(b) of the Federal Rules of

17   Appellate Procedure, if you could not afford an attorney to

18   represent you, an attorney could be appointed to represent you.

19            Mr. Levin, again, thank you for taking this Court

20   appointment here after Mr. Gaver essentially wanted to jettison

21   or fire his trial counsel, but you should just make sure you

22   put a note in your file, Mr. Levin, that those steps are taken

23   to ensure that Mr. Gaver files an appeal, as I believe he wants

24   to.

25            **MR. LEVIN:**  Yes, sir.

1          **THE COURT:**  Yes.  Is there anything further from the
2     point of view of the Government on this matter, Mr. Gray?
3          **MR. GRAY:**  Not from the Government, Your Honor.
4          **THE COURT:**  And I want to thank -- Mr. Izant, thank
5     you very much for your presentation.  I know it's early in your
6     career, and you did an excellent job in this case.
7          **MR. IZANT:**  Thank you, Your Honor.
8          **THE COURT:**  And, Agent Wahl and Agent Cao and
9     Agent Rutledge, thank you for your work here.  My comments
10    about how long it would have taken to discover this was not a
11    reflection on the law enforcement agencies at all.  It was just
12    so deep that you all followed up on good information once you
13    had it from the divorce proceedings, but thank all of you for
14    your efforts.
15          And, Mr. Ulwick, thank you for your time here with
16    respect to Santander Bank.
17          And, Mr. Levin, anything further from the point of
18    view of the Defendant?
19          **MR. LEVIN:**  No, Your Honor.
20          **THE COURT:**  All right.  I want to thank you as well,
21    as always, for your service to the Court as Court-appointed
22    counsel.
23          And, Mr. Gaver, I wish you the best of luck.  You
24    have some tough days ahead --
25          **THE DEFENDANT:**  Yes, sir, I do.  Thank you.

1      **THE COURT:**  -- but I'm going to try to see that you

2  go to the best facility I can send you in the federal Bureau of

3  Prisons, and we're going to try to get you there as soon as we

4  can --

5      **THE DEFENDANT:**  Thank you, sir.

6      **THE COURT:**  -- and get you out of CDF and allow you

7  to get treatment, because you definitely need it.  With that,

8  this Court stands adjourned for the day.

9      Thank you all very much.

10      **THE CLERK:**  All rise.  This Honorable Court is now

11  adjourned.

12      (Proceedings adjourned.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, Martin J. Giordano, Registered Merit Reporter and

6     Certified Realtime Reporter, in and for the United States

7     District Court for the District of Maryland, do hereby certify,

8     pursuant to 28 U.S.C. § 753, that the foregoing is a true and

9     correct transcript of the stenographically-reported proceedings

10    held in the above-entitled matter and that the transcript page

11    format is in conformance with the regulations of the Judicial

12    Conference of the United States.

13

14                        Dated this 20th day of December 2018.

15

16          _Martin J. Giordano_____

17          MARTIN J. GIORDANO, RMR, CRR

18          FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

## $

**$100** [1] - 63:6
**$100,000** [1] - 43:23
**$115,000** [1] - 43:25
**$12,500** [1] - 44:4
**$15** [1] - 34:15
**$2,500** [1] - 44:13
**$20,000** [2] - 44:2, 44:10
**$25** [1] - 16:25
**$300,000** [1] - 33:13
**$350,000** [1] - 44:6
**$48,774** [1] - 23:6
**$48,774,308.75** [5] - 23:6, 24:13, 51:19,
   51:25, 61:23
**$49** [1] - 54:20
**$50** [6] - 35:21, 35:25, 36:4, 50:20,
   54:16, 61:2
**$50,000** [2] - 44:7, 44:8
**$65** [1] - 38:17
**$8,000** [1] - 44:12

## 0

**07-087** [1] - 55:19

## 1

**1** [9] - 2:10, 16:23, 17:7, 20:10, 25:15,
   34:21, 47:23, 60:6, 61:16
**10** [5] - 2:12, 16:22, 17:9, 60:10, 61:17
**100** [1] - 9:16
**101** [2] - 1:24, 24:16
**102** [1] - 9:4
**102-1** [1] - 9:5
**11** [2] - 12:19, 20:6
**12** [1] - 16:19
**12-page** [1] - 47:24
**120** [2] - 60:9
**13** [3] - 1:7, 2:1, 16:20
**1344** [1] - 2:12
**14** [4] - 11:9, 11:21, 13:22, 63:13
**15** [12] - 18:7, 25:5, 25:9, 34:12, 47:4,
   47:13, 47:14, 47:15, 54:14, 55:24,
   58:25, 60:13
**15-year** [1] - 58:13
**16** [1] - 16:7
**17** [5] - 47:3, 47:14, 59:3, 60:4, 60:12
**17-year** [1] - 60:15
**18** [7] - 2:11, 2:13, 13:2, 17:10, 54:3,
   57:10, 57:25
**18-year** [1] - 34:1
**188** [3] - 18:6, 21:23, 54:1
**19** [1] - 18:8
**1957** [2] - 2:13, 17:10
**1984** [1] - 11:24
**1st** [3] - 2:9, 34:3, 34:4

## 2

**2** [7] - 27:6, 33:4, 33:7, 33:8, 34:20,
   47:24, 50:17
**2'16** [1] - 35:13
**2.5** [1] - 55:25
**20** [2] - 16:8, 58:25
**2002** [1] - 43:24
**2003** [2] - 14:23, 15:18
**2004** [2] - 14:7, 16:2
**2005** [3] - 11:10, 11:21
**2006** [1] - 44:23
**2007** [1] - 12:20
**2009** [3] - 33:25, 34:13, 57:8
**2010** [4] - 33:2, 33:15, 34:3, 34:5
**2015** [4] - 31:25, 33:15, 37:15, 43:25
**2016** [3] - 31:23, 32:2, 32:3
**2017** [8] - 25:5, 25:9, 26:15, 28:13, 31:2,
   31:23, 35:14, 60:13
**2018** [14] - 1:7, 2:1, 8:15, 9:2, 26:15,
   27:8, 27:12, 27:25, 28:6, 28:8, 29:5,
   29:11, 50:18, 66:14
**204** [3] - 60:4, 60:6, 60:12
**20th** [2] - 27:11, 66:14
**210** [1] - 38:22
**21201** [1] - 1:24
**22** [1] - 17:1
**235** [3] - 18:6, 21:23, 54:1
**25** [5] - 23:8, 23:10, 29:19, 38:17, 56:10
**25-year** [2] - 43:23, 58:25
**28** [6] - 8:4, 8:5, 8:12, 17:16, 21:20, 66:8
**29** [1] - 8:6
**2nd** [2] - 22:21, 24:8

## 3

**3** [1] - 33:6
**3.4** [1] - 27:22
**30** [6] - 8:15, 9:2, 15:5, 40:23, 56:10,
   58:12
**308.75** [1] - 23:13
**33** [2] - 17:8, 20:5
**34** [1] - 17:11
**3553** [1] - 57:25
**3553a** [1] - 13:3
**3553(a)** [1] - 54:3
**3553(a)(2** [1] - 57:10
**3553(a)(6** [1] - 55:15
**36** [1] - 17:20, 18:4, 21:22
**376** [1] - 57:7
**39** [4] - 7:25, 8:6, 8:12, 21:20
**3:08** [1] - 1:8
**3C1.1** [1] - 19:10

## 4

**4(a** [1] - 19:10

## 4(b

**4(b** [1] - 63:16
**41** [1] - 51:8
**410-962-4504** [1] - 1:25
**425** [1] - 27:12
**435** [1] - 27:10
**48** [1] - 23:13
**48,700** [1] - 24:12
**48,774** [1] - 61:21
**48,774,308.75** [1] - 61:23
**49.7** [1] - 54:17
**4:00** [1] - 46:19
**4:33** [1] - 1:8

## 5

**500** [2] - 27:7, 27:12
**5051** [1] - 10:13
**51** [1] - 16:7
**57** [1] - 45:17
**575** [1] - 57:7
**5th** [1] - 27:8

## 6

**65** [2] - 16:25, 29:19
**68** [1] - 13:16

## 7

**7** [3] - 17:1, 28:11, 29:10
**70** [3] - 29:13, 29:14, 29:17
**73** [6] - 23:22, 23:24, 32:11, 32:14,
   50:22, 51:7
**75** [4] - 23:8, 23:10, 23:11, 23:12
**753** [1] - 66:8
**774** [1] - 23:13
**78-square-foot** [1] - 46:9
**7th** [2] - 29:4, 39:2

## 8

**8** [4] - 2:10, 16:23, 60:6, 61:16
**85** [1] - 16:7

## 9

**9** [7] - 2:12, 16:22, 17:9, 48:3, 48:4,
   60:9, 61:17
**90** [1] - 27:16
**98** [1] - 39:2
**99** [1] - 47:24

## A

**a.m** [1] - 46:19
**ability** [1] - 10:20

**able** [3] - 29:15, 62:2, 63:4
**ABOVE** [1] - 1:9
**above-entitled** [1] - 66:10
**ABOVE-ENTITLED** [1] - 1:9
**abruptly** [1] - 19:23
**absent** [1] - 16:12
**absolutely** [1] - 41:16
**abuse** [3] - 62:17, 62:18, 62:25
**acceptance** [1] - 38:20
**accepted** [1] - 6:12
**access** [1] - 28:24
**accordance** [1] - 51:25
**according** [6] - 27:21, 29:11, 32:11, 32:18, 34:11, 50:22
**account** [5] - 10:15, 12:10, 33:17, 34:9, 59:14
**accounting** [1] - 19:19
**accurate** [2] - 47:19, 59:18
**accurately** [1] - 47:20
**accustomed** [1] - 14:11
**achieve** [3] - 13:13, 57:9, 57:24
**achieved** [2] - 13:2, 57:6
**Act** [6] - 11:24, 14:23, 14:25, 15:3, 16:17, 30:2
**action** [3] - 10:17, 10:18, 35:15
**actions** [1] - 43:8
**activity** [1] - 57:22
**actual** [1] - 46:23
**add** [1] - 21:4
**addicted** [1] - 58:10
**addiction** [1] - 59:1
**addition** [2] - 20:9, 29:20
**additional** [3] - 17:11, 30:23, 37:5
**additionally** [1] - 8:25
**address** [10] - 7:21, 8:6, 8:9, 8:23, 18:10, 27:4, 49:8, 49:11, 50:5, 52:21
**addressed** [3] - 8:13, 20:7, 27:4
**addressing** [3] - 17:19, 24:20, 60:23
**adjourned** [3] - 65:8, 65:11, 65:12
**adjustment** [4] - 7:19, 17:12, 18:11, 19:4
**administration** [1] - 17:15
**Administration** [1] - 2:22
**administrative** [1] - 15:18
**administrators** [1] - 28:25
**adopted** [1] - 12:8
**advanced** [3] - 27:5, 31:21, 38:7
**advantage** [1] - 36:17
**advice** [1] - 5:25
**advise** [2] - 5:19, 63:12
**advised** [3] - 49:5, 49:7, 52:16
**Advisory** [1] - 44:22
**advisory** [11] - 11:25, 12:1, 12:2, 12:25, 13:10, 13:11, 16:19, 18:6, 18:8, 21:23, 54:1
**affidavit** [3] - 3:9, 3:12, 9:15
**afford** [2] - 49:25, 63:17
**afraid** [1] - 56:13
**afternoon** [7] - 2:4, 2:5, 3:17, 3:20, 3:25,

24:20, 25:12
**afterwards** [1] - 62:3
**aged** [1] - 45:20
**agencies** [1] - 64:11
**agent** [1] - 33:1
**Agent** [10] - 1:17, 1:18, 1:18, 2:21, 2:25, 3:3, 3:5, 64:8, 64:9
**agents** [1] - 3:3
**aggravated** [1] - 38:16
**ago** [4] - 11:22, 12:19, 16:3, 35:11
**agree** [1] - 39:6
**agreement** [1] - 15:13
**ahead** [3] - 4:5, 48:5, 64:24
**air** [2] - 27:16, 27:23
**air-conditioned** [1] - 27:16
**alcohol** [1] - 62:23
**allegation** [1] - 17:17
**alleges** [1] - 28:19
**allow** [1] - 65:6
**allowed** [2] - 16:14, 21:14
**almost** [5] - 11:9, 11:21, 26:18, 34:9, 54:19
**alternatively** [1] - 60:21
**Alzheimer's** [1] - 44:8
**amazing** [1] - 20:23
**AMERICA** [1] - 1:3
**amount** [13] - 23:6, 26:24, 34:16, 43:14, 47:9, 51:19, 51:24, 54:10, 54:18, 58:24, 59:19, 61:20, 61:21
**ample** [1] - 29:22
**amputee** [1] - 31:17
**Amy** [1] - 37:23
**analysis** [5] - 31:7, 33:13, 34:2, 34:12, 53:24
**Angeles** [1] - 59:22
**anguish** [1] - 38:10
**annoying** [1] - 29:7
**annual** [4] - 19:19, 19:21, 26:12, 27:3
**annually** [1] - 44:10
**antiquated** [1] - 28:20
**anyway** [1] - 53:11
**apart** [2] - 13:4, 47:22
**apologize** [6] - 6:8, 6:11, 53:2, 53:6, 53:8, 53:18
**apology** [1] - 6:12
**appeal** [7] - 12:12, 12:13, 49:7, 52:18, 63:12, 63:13, 63:23
**Appeals** [2] - 12:11, 57:6
**appearance** [1] - 45:19
**Appellate** [1] - 63:17
**applicable** [2] - 15:12, 15:14
**application** [1] - 3:10
**Application** [1] - 19:10
**applied** [2] - 11:25, 62:8
**applies** [2] - 15:2, 26:9
**apply** [1] - 12:9
**applying** [1] - 19:14
**appointed** [4] - 9:7, 37:3, 63:18, 64:21
**appointment** [3] - 4:13, 40:24, 63:20

**appreciate** [3] - 4:12, 50:13, 50:18
**approach** [2] - 12:7, 53:17
**appropriate** [13] - 13:8, 15:16, 30:22, 31:15, 35:19, 38:22, 41:6, 45:4, 46:17, 46:19, 47:5, 47:13, 59:17
**appropriately** [1] - 36:11
**approval** [1] - 62:20
**April** [1] - 29:4
**area** [2] - 55:22, 55:25
**Arendt** [2] - 38:5, 38:10
**argued** [1] - 24:25
**argument** [6] - 18:15, 19:3, 20:7, 24:24, 30:10, 32:18
**arguments** [1] - 56:5
**arise** [1] - 27:2
**articles** [1] - 45:18
**artist** [1] - 36:25
**as-needed** [1] - 28:5
**aspect** [1] - 40:18
**aspects** [2] - 36:12, 39:8
**assert** [1] - 10:20
**assessment** [2] - 58:3, 63:6
**assets** [6] - 9:1, 9:8, 10:21, 35:16, 56:20
**assigned** [2] - 26:17, 42:24
**assistance** [1] - 15:9
**Assistant** [4] - 1:13, 1:13, 2:18, 2:20, 4:12, 50:10
**Association** [1] - 44:8
**assume** [3] - 36:18, 50:23, 50:24
**assurance** [2] - 26:14, 27:9
**attached** [4] - 23:25, 24:9, 24:16, 29:16
**attack** [1] - 14:6
**attempted** [3] - 17:14, 19:22, 27:3
**attempting** [2] - 19:11, 20:14
**attendant** [1] - 18:3
**attention** [1] - 43:16
**attenuated** [3] - 18:17, 21:7, 21:15
**attorney** [6] - 4:9, 5:4, 49:18, 61:7, 63:17, 63:18
**Attorney** [6] - 1:13, 1:13, 2:18, 2:20, 4:12, 50:11
**Attorney's** [2] - 52:6, 54:12
**auction** [1] - 44:12
**audit** [1] - 26:12
**audits** [5] - 19:19, 20:2, 21:11, 27:3, 30:4
**August** [1] - 2:9
**available** [2] - 26:23, 27:13
**avoiding** [1] - 55:15
**aware** [2] - 31:7, 56:6

**B**

**bad** [1] - 59:21
**Baltimore** [6] - 1:7, 1:24, 28:9, 29:4, 58:21, 59:20
**Bank** [13] - 10:12, 10:18, 31:25, 34:13, 37:7, 50:2, 50:5, 50:15, 50:19, 51:19, 56:24, 61:21, 64:16

**bank** [5] - 2:11, 16:23, 50:5, 56:25, 61:3
**bankers** [1] - 37:11
**banks** [1] - 40:9
**Bar** [1] - 40:8
**base** [2] - 17:1, 17:8
**based** [9] - 9:10, 14:14, 24:25, 29:15, 31:10, 31:13, 36:21, 38:15, 59:19
**basis** [7] - 19:13, 19:21, 26:18, 26:21, 27:4, 28:5, 52:3
**became** [4] - 33:25, 54:25, 55:4, 56:16
**becomes** [2] - 52:5, 59:6
**bed** [2] - 27:7, 27:13
**beds** [1] - 27:12
**BEFORE** [1] - 1:10
**beg** [3] - 5:13, 6:9, 50:3
**began** [1] - 31:23
**begin** [1] - 24:20
**beginning** [1] - 42:20
**behalf** [14] - 1:12, 1:14, 2:19, 3:19, 3:21, 22:7, 22:8, 22:9, 23:17, 49:7, 49:13, 50:1, 50:4, 50:5
**behaved** [1] - 39:16
**bench** [1] - 54:14
**benefit** [2] - 18:25, 40:13
**benefitted** [1] - 45:22
**BENNETT** [1] - 1:10
**Bennett** [1] - 2:3
**Bernard** [1] - 36:17
**Bernie** [5] - 42:12, 42:20, 42:22, 55:10
**best** [6] - 30:14, 30:17, 49:4, 60:22, 64:23, 65:2
**better** [1] - 39:23
**between** [11] - 18:22, 21:10, 26:2, 26:5, 26:8, 37:15, 38:17, 43:24, 46:6, 46:23, 57:19
**beyond** [1] - 61:11
**Bickham** [1] - 26:20
**big** [3] - 6:18, 46:6, 46:23
**bigger** [4] - 33:16, 55:5, 55:6
**bit** [2] - 21:7, 21:15
**bitter** [1] - 39:22
**blanket** [2] - 27:18, 27:19
**Board** [5] - 33:22, 34:4, 36:25, 55:7
**Bokelkamp** [2] - 24:7, 51:14
**BOKELKAMP** [1] - 24:7
**bona** [1] - 48:14
**Bonita** [1] - 54:24
**Booker** [4] - 11:12, 11:21, 12:8, 53:25
**books** [1] - 21:12
**boosters** [1] - 44:5
**BOP** [1] - 40:25
**bought** [1] - 56:24
**bound** [1] - 12:9
**Bragg** [1] - 42:8
**Brett** [2] - 24:7, 51:14
**Bridgewater** [1] - 44:7
**brief** [1] - 50:14
**briefly** [1] - 18:15
**bring** [3] - 33:8, 41:18, 43:16

**bringing** [1] - 42:17
**brings** [1] - 48:20
**brought** [2] - 44:1, 58:8
**buildings** [1] - 28:9
**Bureau** [4] - 47:11, 60:5, 60:9, 65:2
**Busby** [1] - 32:1
**business** [3] - 33:16, 34:9, 37:13
**businessman** [1] - 37:13
**Butner** [11] - 41:5, 41:12, 41:19, 41:22, 42:4, 42:16, 49:2, 56:15, 60:20, 60:21

## C

**Cabo** [2] - 32:21, 32:23
**cafeteria** [1] - 46:14
**calculate** [2] - 16:18, 52:2
**calculation** [2] - 7:17, 12:24
**CAME** [1] - 1:9
**Camp** [1] - 41:19
**camp** [2] - 41:21, 42:4
**campaign** [3] - 20:11, 20:23, 35:12
**camps** [1] - 42:6
**cancer** [5] - 31:22, 31:24, 32:3, 32:13, 32:22
**candor** [1] - 56:23
**cane** [1] - 4:2
**Cao** [6] - 1:18, 3:3, 3:4, 3:5, 64:8
**CAO** [1] - 3:7
**capturing** [1] - 47:20
**car** [1] - 29:18
**cards** [1] - 21:9
**care** [2] - 41:13, 49:4
**career** [2] - 54:11, 64:6
**Carolina** [7] - 41:5, 41:12, 41:22, 42:16, 56:16, 60:20, 60:21
**case** [53] - 2:6, 3:3, 4:21, 8:15, 8:16, 9:17, 10:17, 10:20, 11:21, 12:8, 12:12, 12:20, 13:9, 15:14, 16:24, 18:3, 19:2, 20:3, 20:8, 21:7, 22:22, 30:22, 31:17, 32:11, 35:20, 36:5, 36:6, 36:8, 38:16, 38:18, 41:15, 42:24, 45:8, 49:6, 50:23, 51:6, 52:14, 52:18, 53:18, 53:23, 54:16, 55:10, 55:18, 55:20, 56:8, 57:7, 58:2, 59:18, 59:23, 63:3, 63:14, 64:6
**Case** [1] - 55:19
**cases** [10] - 15:2, 30:21, 35:24, 36:1, 36:3, 53:25, 54:9, 55:17, 57:15, 58:23
**categories** [2] - 17:22, 37:10
**category** [2] - 18:5, 21:22
**caused** [1] - 38:9
**causes** [1] - 43:18
**causing** [1] - 17:4
**CDF** [26] - 26:11, 26:17, 26:18, 27:1, 27:6, 27:7, 27:13, 27:15, 28:1, 28:2, 28:3, 28:12, 28:24, 29:2, 30:6, 30:11, 30:14, 30:17, 30:24, 45:21, 45:25, 56:6, 56:12, 59:8, 59:12, 65:6
**CDF's** [2] - 27:23, 29:3
**cell** [3] - 46:10, 46:12, 46:15

**cells** [1] - 27:15
**center/hotel** [1] - 37:3
**central** [1] - 20:1
**certain** [2] - 13:18, 15:6
**certainly** [22] - 4:15, 8:9, 18:3, 20:1, 20:17, 24:10, 27:2, 33:16, 34:10, 38:9, 39:5, 40:8, 41:7, 45:20, 45:21, 48:6, 48:8, 56:6, 57:2, 57:11, 59:16, 59:25
**CERTIFICATE** [1] - 66:1
**certified** [1] - 29:3
**Certified** [1] - 66:6
**certify** [1] - 66:7
**chairman** [5] - 33:22, 34:3, 36:24, 44:21, 55:7
**challenge** [1] - 24:11
**challenges** [3] - 10:12, 40:23, 48:21
**Chamber** [1] - 44:20
**chance** [1] - 52:8
**change** [2] - 21:20, 45:19
**Characteristics** [1] - 15:25
**characteristics** [3] - 13:6, 54:6, 54:22
**characterize** [1] - 20:12
**charge** [3] - 8:15, 17:23, 18:2
**charged** [2] - 2:12, 54:13
**charges** [4] - 16:22, 16:23, 60:11, 62:19
**charging** [1] - 2:10
**charitable** [5] - 32:8, 32:25, 33:2, 33:14, 33:20
**charity** [3] - 34:16, 43:15, 56:12
**check** [2] - 23:19, 23:22
**chemotherapy** [1] - 32:4
**Chesapeake** [3] - 25:1, 26:2, 59:10
**Chicago** [1] - 59:22
**chief** [1] - 15:4
**Chief** [1] - 15:17
**child** [1] - 58:21
**children** [1] - 40:21
**choice** [1] - 57:19
**chose** [2] - 43:20, 45:2
**Christ** [4] - 43:22, 44:18
**Church** [2] - 43:22, 44:18
**circle** [1] - 33:9
**Circuit** [6] - 17:25, 31:12, 31:18, 57:7, 57:8, 57:23
**circumstances** [5] - 13:5, 29:22, 34:17, 54:5, 54:7
**cited** [1] - 55:17
**citizens** [1] - 56:2
**City** [2] - 29:4, 37:2
**city** [3] - 58:20, 59:2
**civil** [6] - 10:17, 10:18, 17:18, 18:16, 19:12, 48:9
**claim** [1] - 31:21
**claimed** [1] - 32:4
**claims** [5] - 9:1, 10:21, 27:5, 31:24, 38:7
**clarify** [1] - 22:13
**clean** [1] - 28:24
**cleaner** [1] - 29:18
**clear** [5] - 10:10, 21:8, 30:16, 48:16,

52:14
**clearly** [2] - 29:7, 38:15
**CLERK** [16] - 2:2, 9:23, 10:2, 10:5, 11:2, 23:23, 24:1, 24:4, 25:17, 25:19, 51:4, 51:8, 51:11, 52:4, 63:9, 65:10
**Clerk** [10] - 9:21, 9:25, 10:6, 11:1, 23:21, 51:2, 51:12, 51:24, 60:19, 63:8
**client** [5] - 48:1, 48:6, 48:8, 52:19, 56:24
**closer** [1] - 4:25
**closing** [1] - 32:18
**Club** [3] - 44:13, 44:17, 44:18
**clubs** [1] - 44:17
**Coast** [1] - 60:23
**cochair** [1] - 30:2
**cockroaches** [1] - 46:8
**Code** [7] - 2:11, 2:13, 13:2, 17:10, 54:3, 57:10, 57:25
**cold** [1] - 27:19
**collar** [3] - 54:13, 58:23, 59:4
**collateral** [1] - 37:5
**College** [8] - 33:21, 33:22, 34:4, 36:24, 44:1, 44:3, 44:7, 44:23
**college** [1] - 55:7
**Collier** [1] - 54:23
**Colony** [1] - 10:13
**coming** [2] - 34:10, 57:12
**comma** [1] - 23:13
**commenced** [1] - 34:2
**comment** [1] - 46:4
**commentary** [1] - 20:19
**comments** [4] - 5:20, 6:3, 6:25, 64:9
**Commerce** [1] - 44:20
**commingled** [1] - 34:10
**Commission** [4] - 15:7, 15:16, 15:20, 16:11
**Commitment** [3] - 9:22, 15:8, 63:14
**committed** [2] - 20:16, 43:9
**Committee** [2] - 30:3, 44:22
**committing** [1] - 19:11
**commode** [1] - 46:13
**communicate** [1] - 40:7
**community** [4] - 36:19, 54:23, 56:2, 61:4
**Community** [2] - 44:3, 44:9
**company** [4] - 20:20, 28:3, 38:5, 38:12
**comparative** [1] - 58:12
**comparison** [5] - 42:3, 42:11, 42:18, 55:25, 56:1
**compel** [1] - 59:15
**competence** [1] - 14:16
**complains** [1] - 30:13
**complete** [2] - 54:25, 55:2
**completed** [1] - 27:24
**complied** [1] - 16:17
**components** [1] - 10:12
**computer** [1] - 1:21
**computers** [1] - 44:14
**conceal** [1] - 21:19
**conceded** [1] - 28:22

**concerned** [3] - 47:16, 51:6, 53:20
**conclude** [1] - 51:17
**concurrent** [4] - 60:8, 60:10, 60:11, 61:18
**conditioned** [1] - 27:16
**conditioning** [1] - 27:24
**conditions** [12] - 25:1, 28:12, 30:6, 30:11, 30:19, 30:24, 31:14, 31:16, 45:25, 46:1, 56:6, 56:12
**conduct** [4] - 17:4, 19:13, 28:4, 57:13
**conducted** [4] - 21:12, 29:12, 35:13, 53:24
**conference** [1] - 8:16
**Conference** [1] - 66:12
**confidential** [2] - 16:1, 16:4
**confinement** [2] - 45:7, 45:15
**confirmed** [1] - 8:20
**conformance** [1] - 66:11
**congregation** [1] - 44:19
**Congress** [2] - 14:24, 16:13
**Congressionally** [1] - 57:9
**Congressionally-mandated** [1] - 57:9
**connection** [2] - 10:13, 10:14
**conscientious** [1] - 37:13
**consider** [9] - 18:1, 18:3, 40:17, 43:7, 45:5, 46:1, 46:22, 47:9
**considerable** [1] - 43:14
**considerably** [1] - 45:20
**consideration** [2] - 34:18, 47:18
**considered** [4] - 13:4, 33:14, 45:10, 54:22
**considering** [1] - 59:24
**consistent** [1] - 59:22
**consistently** [1] - 45:24
**constituting** [1] - 17:4
**constitutionality** [3] - 11:13, 11:17, 11:23
**constructive** [1] - 6:9
**consult** [1] - 12:10
**consumes** [1] - 57:18
**contained** [1] - 17:16
**containing** [2] - 16:1, 16:4
**contended** [4] - 17:13, 27:15, 29:6, 29:20
**contention** [1] - 34:8
**contest** [1] - 9:8
**context** [2] - 11:25, 12:3
**contiguous** [1] - 29:14
**continue** [2] - 21:14, 21:18
**continued** [2] - 34:1, 62:10
**continues** [1] - 40:11
**continuing** [1] - 20:14
**contract** [1] - 26:5
**contribute** [1] - 45:2
**contributed** [1] - 44:3
**contributions** [6] - 32:8, 32:25, 33:2, 33:14, 43:21, 55:4
**contrition** [1] - 38:20
**control** [4] - 28:3, 28:5, 48:7, 58:22

**controlled** [1] - 28:24
**convention** [1] - 37:3
**conversations** [1] - 9:11
**convicted** [5] - 8:23, 17:9, 18:2, 18:18, 43:4
**conviction** [3] - 4:19, 19:14, 43:6
**convictions** [1] - 17:21
**copy** [4] - 10:1, 10:3, 10:25, 25:13
**correct** [20] - 3:3, 3:11, 5:7, 7:24, 9:9, 9:12, 14:3, 14:12, 22:16, 23:8, 23:9, 23:15, 25:10, 25:16, 33:24, 41:15, 47:2, 55:9, 62:4, 66:9
**corrected** [2] - 23:4, 28:7
**Correction** [1] - 26:4
**corrections** [3] - 7:10, 7:11, 7:16
**correctly** [1] - 46:1
**counsel** [13] - 2:15, 2:20, 4:11, 9:7, 11:15, 19:22, 20:13, 22:18, 25:17, 35:8, 35:9, 63:21, 64:22
**counsel's** [1] - 46:25
**counseling** [3] - 55:1, 60:17, 61:14
**Count** [3] - 16:22, 60:9, 60:10
**count** [4] - 8:19, 8:21, 8:24, 63:6
**Counts** [7] - 2:10, 2:12, 16:23, 17:9, 60:6, 61:16, 61:17
**counts** [3] - 8:23, 43:6, 60:7
**County** [3] - 17:25, 44:21, 54:23
**course** [7] - 18:19, 19:12, 20:15, 33:17, 36:9, 38:4, 50:19
**court** [5] - 4:18, 11:6, 11:7, 15:4, 58:19
**Court** [53] - 2:2, 4:7, 4:11, 6:3, 7:1, 7:2, 7:5, 9:6, 11:9, 11:11, 11:12, 11:17, 11:22, 12:4, 12:8, 12:18, 12:20, 15:17, 15:24, 16:9, 17:25, 18:20, 23:5, 25:11, 25:24, 30:3, 31:11, 33:11, 34:19, 34:25, 39:12, 39:17, 40:19, 47:17, 49:8, 50:5, 50:8, 50:17, 50:18, 51:18, 51:20, 52:21, 53:2, 53:3, 53:6, 57:6, 58:11, 63:19, 64:21, 65:8, 65:10, 66:7
**COURT** [139] - 1:1, 2:4, 2:6, 2:23, 3:2, 3:5, 3:8, 3:12, 3:18, 3:23, 4:4, 4:16, 4:24, 5:3, 5:6, 5:9, 5:13, 5:16, 5:19, 5:22, 5:24, 6:2, 6:6, 6:9, 6:12, 6:15, 6:17, 6:21, 6:24, 7:5, 7:8, 7:15, 7:21, 7:25, 8:3, 8:9, 8:12, 9:12, 9:14, 9:25, 10:3, 10:8, 10:16, 10:22, 11:3, 12:7, 12:17, 13:24, 14:2, 14:5, 14:8, 14:11, 14:14, 14:19, 19:5, 21:3, 21:6, 22:2, 22:5, 22:20, 22:23, 23:1, 23:4, 23:9, 23:13, 23:16, 23:21, 23:24, 24:2, 24:5, 24:22, 25:4, 25:8, 25:15, 25:23, 25:25, 26:20, 30:1, 30:6, 30:9, 30:19, 32:10, 32:17, 33:4, 33:7, 33:10, 33:20, 34:6, 35:1, 36:6, 38:23, 39:13, 39:16, 39:25, 40:3, 40:20, 41:4, 41:8, 41:11, 41:17, 41:20, 42:1, 42:4, 42:7, 42:10, 42:15, 42:24, 47:9, 47:22, 48:22, 48:25, 49:9, 49:17, 49:21, 49:24, 50:3, 50:6, 50:21, 51:2, 51:5, 51:9, 51:12, 51:21, 51:23, 52:5, 52:11, 52:22, 53:4, 53:8, 53:16,

62:7, 63:10, 64:1, 64:4, 64:8, 64:20, 65:1, 65:6, 66:18
**Court-appointed** [1] - 64:21
**courthouse** [1] - 58:9
**Courthouse** [1] - 1:23
**courtroom** [2] - 42:23, 53:14
**courts** [3] - 15:1, 15:2, 15:3
**Courts** [1] - 12:11
**covering** [1] - 33:1
**crashing** [1] - 61:10
**credit** [13] - 30:23, 31:1, 31:5, 33:18, 47:1, 47:4, 47:8, 47:10, 47:15, 50:20, 60:12, 62:19, 62:20
**credited** [1] - 31:3
**crime** [4] - 35:19, 35:21, 36:13, 50:17
**crimes** [3] - 37:6, 43:3, 59:5
**Criminal** [3] - 1:4, 2:7, 30:2
**criminal** [14] - 10:20, 11:7, 15:1, 17:21, 17:22, 18:5, 21:22, 30:20, 36:10, 54:13, 57:13, 58:23, 59:4
**criticize** [1] - 59:17
**CRR** [2] - 1:23, 66:17
**crucial** [1] - 48:11
**crunching** [1] - 37:17
**culture** [1] - 58:7
**current** [1] - 36:3
**custody** [9] - 25:4, 25:5, 25:8, 31:1, 31:2, 60:5, 60:8, 60:13, 60:14
**cyber** [1] - 17:24

## D

**Dad** [1] - 35:7
**daily** [2] - 26:18, 26:21
**damage** [3] - 36:22, 37:5, 38:4
**danger** [1] - 48:5
**date** [1] - 35:5
**Dated** [1] - 66:14
**dates** [1] - 16:2
**dating** [1] - 32:1
**daughter** [2] - 35:4, 48:15
**David** [5] - 1:18, 3:9, 9:15, 36:7, 55:19
**day-to-day** [1] - 38:11
**days** [6] - 15:5, 36:2, 40:24, 55:10, 63:13, 64:24
**deacon** [1] - 44:19
**deaf** [2] - 29:21, 56:13
**deal** [1] - 55:1
**dealing** [4] - 24:12, 57:16, 57:20, 58:10
**deals** [1] - 19:9
**decades** [1] - 61:5
**DECEMBER** [1] - 2:1
**December** [5] - 1:7, 12:20, 25:3, 39:2, 66:14
**decibels** [3] - 29:13, 29:14, 29:17
**decide** [1] - 41:22
**declaration** [2] - 24:7, 51:13
**declined** [1] - 45:24
**deducted** [1] - 63:10

**deemed** [1] - 62:15
**deep** [2] - 56:17, 64:12
**deeper** [4] - 57:17, 57:21
**DEFENDANT** [36] - 4:23, 5:2, 5:5, 5:8, 5:11, 5:14, 5:18, 5:21, 5:23, 6:1, 6:5, 6:8, 6:11, 6:14, 6:16, 6:20, 6:23, 7:4, 7:6, 12:6, 12:16, 13:22, 13:25, 14:4, 14:6, 14:10, 14:13, 49:15, 49:19, 49:23, 52:10, 53:1, 53:6, 53:10, 64:25, 65:5
**Defendant** [20] - 1:6, 1:14, 2:8, 3:19, 15:25, 20:12, 25:2, 29:20, 30:25, 31:9, 31:21, 32:8, 32:12, 34:11, 35:13, 36:16, 37:9, 38:19, 54:6, 64:18
**defendant** [3] - 30:13, 30:20, 45:9
**Defendant's** [8] - 4:10, 10:14, 24:24, 28:11, 29:10, 35:4, 35:19, 36:12
**defendants** [5] - 11:7, 30:9, 30:12, 54:12, 59:4
**Defense** [9] - 22:3, 24:25, 27:5, 27:15, 28:19, 31:10, 32:7, 32:24, 38:8
**Defense's** [1] - 24:21
**deficiencies** [1] - 28:6
**definite** [1] - 22:14
**definitely** [4] - 11:1, 48:25, 58:22, 65:7
**defrauded** [1] - 61:3
**degrees** [1] - 27:17
**deletion** [1] - 11:18
**demand** [1] - 39:17
**demanded** [1] - 59:13
**Department** [7] - 26:4, 26:8, 27:22, 29:4, 44:15, 45:8, 45:11
**departure** [2] - 15:13, 31:13
**departures** [1] - 15:12
**deplorable** [1] - 28:12
**deposition** [4] - 18:16, 19:25, 20:5, 20:19
**depth** [2] - 55:11, 56:16
**described** [2] - 29:9, 35:12
**designated** [2] - 40:25, 45:23
**designed** [1] - 46:10
**desire** [1] - 22:10
**desired** [1] - 16:10
**desires** [1] - 24:11
**desperately** [1] - 28:21
**destruction** [1] - 61:6
**detail** [1] - 37:17
**detailed** [1] - 34:2
**detainees** [3] - 27:7, 27:10, 28:23
**Detention** [3] - 25:1, 26:2, 59:10
**deter** [1] - 57:12
**deteriorated** [1] - 28:20
**determination** [2] - 5:16, 12:25
**determine** [4] - 13:8, 29:15, 49:11, 53:25
**determined** [2] - 31:19, 62:25
**determining** [1] - 46:2
**deterrence** [2] - 38:19, 57:14
**developed** [1] - 18:21

**Devens** [2] - 41:5, 60:22
**difference** [2] - 46:6, 46:23
**different** [4] - 4:9, 13:22, 37:10, 42:23
**difficult** [4] - 30:24, 39:8, 39:19, 43:7
**difficulty** [1] - 52:24
**diligence** [1] - 53:12
**diligent** [1] - 37:13
**directed** [3] - 20:12, 21:1, 26:25
**directing** [1] - 15:18
**discover** [1] - 64:10
**discovered** [1] - 57:3
**discovering** [1] - 36:24
**discovers** [1] - 37:2
**discrepancies** [1] - 37:18
**discussed** [3] - 9:9, 32:18, 52:11
**dishwashers** [1] - 46:11
**disparities** [2] - 13:7, 55:15
**disposal** [1] - 28:20
**disputed** [3] - 18:10, 21:24, 22:2
**dissatisfaction** [1] - 4:10
**dissuade** [1] - 20:14
**distinguished** [1] - 40:8
**District** [5] - 7:2, 45:9, 66:7
**district** [3] - 31:18, 50:11, 54:9
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**divorce** [13] - 18:16, 18:19, 18:25, 21:10, 35:8, 35:15, 39:22, 39:23, 39:25, 56:19, 56:25, 57:2, 64:13
**Docket** [1] - 1:4
**docket** [3] - 22:22, 23:19, 24:3
**Document** [6] - 9:4, 9:5, 10:6, 25:24, 33:11, 34:25
**document** [2] - 47:24, 51:3
**documented** [1] - 54:19
**documents** [4] - 15:6, 15:8, 15:21, 20:23
**dollar** [1] - 36:1
**dollars** [2] - 42:13, 63:7
**donated** [1] - 43:23
**donations** [1] - 33:21
**done** [6] - 19:19, 19:24, 26:13, 26:14, 30:12, 56:3
**double** [2] - 31:5, 31:17
**doubt** [1] - 14:16
**doubts** [1] - 57:3
**down** [5] - 4:25, 21:9, 47:4, 54:24, 61:11
**downloaded** [1] - 50:24
**downtown** [2] - 28:9, 37:3
**downward** [4] - 31:9, 31:13, 31:19, 32:5
**drinking** [1] - 29:2
**driven** [2] - 58:6, 59:1
**drugs** [2] - 58:10
**du** [1] - 30:10
**due** [1] - 56:23
**during** [14] - 8:15, 18:16, 19:12, 20:3, 27:19, 28:6, 29:13, 44:12, 45:20, 50:18, 61:24, 62:10, 62:13, 62:23

# E

**e-mail** [1] - 32:20
**e-mails** [2] - 34:24, 37:14
**early** [3] - 25:3, 26:15, 64:5
**ears** [2] - 29:21, 56:13
**easier** [2] - 43:13, 45:2
**East** [1] - 60:23
**easy** [2] - 34:14, 43:11
**eaten** [1] - 46:12
**eating** [1] - 46:14
**effect** [1] - 29:17
**effectively** [1] - 12:1
**effort** [2] - 18:24, 53:17
**efforts** [1] - 64:14
**egregious** [1] - 54:7
**eight** [4] - 2:9, 21:8, 28:1, 61:1
**eight-day** [2] - 2:9, 21:8
**either** [1] - 52:17
**elaborate** [2] - 7:19, 43:20
**elder** [1] - 44:19
**embarrassment** [1] - 38:10
**emotional** [2] - 20:12, 35:12
**employees** [1] - 37:21
**end** [11] - 15:10, 32:3, 34:14, 37:21, 38:12, 38:16, 42:19, 45:14, 59:25, 60:1, 60:2
**ended** [1] - 40:10
**enforcement** [1] - 64:11
**engaged** [1] - 56:3
**engaging** [1] - 17:3
**engineered** [1] - 38:13
**enhancement** [1] - 19:15
**ensure** [2] - 15:5, 63:23
**entered** [2] - 24:8, 63:15
**entire** [5] - 38:13, 50:23, 55:12, 59:6, 61:4
**entirely** [1] - 38:2
**ENTITLED** [1] - 1:9
**entitled** [3] - 34:17, 53:9, 66:10
**entry** [1] - 63:14
**environment** [1] - 59:21
**equipment** [1] - 28:14
**equivalent** [1] - 29:17
**especially** [1] - 34:8
**Esquire** [1] - 1:15
**essential** [1] - 21:18
**essentially** [8] - 13:12, 16:21, 17:25, 18:7, 26:18, 35:12, 47:23, 63:20
**evening** [1] - 14:3
**event** [1] - 8:22
**eventually** [1] - 25:6
**evidence** [6] - 20:3, 21:7, 32:10, 32:13, 32:17, 53:23
**ex** [2] - 18:22, 18:25
**ex-wife** [2] - 18:22, 18:25
**exact** [1] - 32:12
**exactly** [3] - 12:19, 25:7, 43:17

**example** [2] - 51:12, 51:13
**exceed** [2] - 27:16, 29:13
**excellent** [2] - 41:13, 64:6
**excess** [2] - 17:7, 44:7
**excruciating** [1] - 29:10
**Exhibit** [15] - 20:5, 20:6, 20:10, 25:15, 32:11, 32:14, 33:4, 33:6, 33:7, 33:8, 34:20, 34:21, 47:23, 48:4, 51:11
**exhibit** [1] - 37:25
**exhibits** [7] - 23:24, 24:9, 24:16, 36:14, 37:16, 50:25, 51:3
**exist** [1] - 25:1
**existence** [1] - 55:2
**expectation** [1] - 10:11
**expected** [1] - 56:10
**expensive** [2] - 40:1, 57:2
**experience** [5] - 46:7, 46:8, 46:20, 46:24, 54:11
**experiences** [1] - 46:24
**explain** [1] - 11:5
**explained** [1] - 8:22
**explanation** [1] - 37:20
**exposed** [1] - 37:24
**exposure** [3] - 20:16, 20:21, 35:17
**expressly** [2] - 19:10, 20:4
**extended** [1] - 36:9
**extent** [2] - 16:16, 62:1
**extraordinarily** [2] - 35:20, 54:7
**extraordinary** [4] - 54:18, 58:4, 58:8, 58:9
**extremely** [3] - 19:17, 36:5, 37:6

# F

**F.3d** [1] - 57:7
**fabrication** [3] - 21:13, 21:14
**face** [1] - 11:7
**faces** [1] - 48:21
**facilities** [3] - 28:17, 41:13, 60:23
**Facility** [3] - 25:2, 26:3, 59:10
**facility** [9] - 26:3, 27:1, 27:11, 29:12, 40:25, 41:4, 49:3, 60:17, 65:2
**fact** [14] - 14:14, 16:24, 19:19, 28:21, 30:25, 43:15, 46:16, 46:22, 48:11, 48:18, 49:6, 52:17, 54:24, 58:7
**factor** [2] - 30:21, 56:7
**factored** [2] - 24:10, 45:4
**factors** [10] - 13:1, 13:2, 13:3, 13:5, 54:2, 54:4, 55:14, 57:4, 57:25, 59:15
**facts** [8] - 18:3, 19:16, 19:17, 20:1, 38:15, 52:14, 58:3, 58:4, 59:24
**fair** [2] - 53:13, 53:20
**fairness** [1] - 59:6
**fall** [2] - 36:20, 37:9
**falls** [2] - 20:18, 56:13
**false** [3] - 18:23, 20:2, 20:19
**falsely** [2] - 19:18, 19:20
**familiar** [4] - 18:20, 30:3, 43:1, 55:10
**family** [3] - 16:1, 16:4, 61:4

**far** [3] - 48:1, 51:5, 53:20
**favor** [1] - 23:5
**FBI** [2] - 1:18, 1:18
**FCI** [2] - 41:22, 60:20
**federal** [25] - 4:18, 11:6, 11:7, 11:13, 11:18, 12:1, 12:8, 12:22, 15:1, 15:2, 15:4, 25:4, 25:5, 25:8, 26:7, 26:9, 26:16, 31:1, 31:2, 58:19, 59:20, 60:13, 65:2
**FEDERAL** [1] - 66:18
**Federal** [4] - 2:21, 19:20, 26:2, 63:16
**felt** [2] - 53:12, 53:13
**female** [1] - 27:10
**few** [6] - 6:17, 8:7, 13:15, 16:3, 35:11, 62:3
**FHFA** [1] - 1:17
**fides** [1] - 48:14
**figure** [8] - 22:15, 22:16, 23:7, 23:16, 23:18, 24:12, 54:19, 61:22
**file** [3] - 12:12, 49:7, 63:22
**filed** [2] - 23:3, 39:2
**files** [1] - 63:23
**filing** [1] - 52:17
**filled** [1] - 28:2
**finally** [1] - 29:6
**Finance** [1] - 2:21
**finances** [1] - 34:2
**financial** [3] - 16:15, 35:20, 57:15
**Financial** [1] - 52:5
**financially** [1] - 18:25
**fine** [18] - 4:4, 4:5, 6:24, 8:9, 39:13, 39:14, 39:17, 49:9, 50:6, 50:7, 51:21, 52:22, 53:5, 63:3, 63:4
**finger** [1] - 38:13
**finished** [1] - 55:6
**fire** [1] - 63:21
**firm** [1] - 19:19
**first** [12] - 4:20, 12:24, 13:16, 14:6, 16:18, 20:18, 21:6, 22:6, 27:8, 42:2, 54:4, 60:13
**five** [1] - 34:16
**fledged** [1] - 41:12
**Floor** [1] - 1:23
**flooring** [1] - 28:14
**Florida** [7] - 17:23, 18:1, 25:6, 31:2, 44:11, 54:24, 60:14
**flowed** [1] - 33:19
**flying** [1] - 32:14
**FOCR** [1] - 1:23
**focused** [1] - 34:23
**followed** [1] - 64:12
**following** [2] - 13:3, 35:6
**food** [1] - 28:17
**FOR** [2] - 1:1, 1:9
**foregoing** [1] - 66:8
**forfeiture** [12] - 3:10, 8:14, 8:19, 8:21, 8:23, 8:24, 9:4, 9:5, 9:8, 9:9, 9:18, 11:1
**Forfeiture** [2] - 9:20, 22:14

**fork** [2] - 57:15, 57:19
**form** [2] - 31:4, 62:7
**format** [1] - 66:11
**former** [6] - 4:12, 20:13, 35:5, 35:14, 36:24, 50:10
**forms** [1] - 19:13
**Fort** [5] - 18:1, 41:5, 41:19, 42:8, 60:22
**fort** [1] - 42:2
**forth** [4] - 16:19, 37:15, 54:3, 57:10
**forts** [1] - 42:6
**forward** [2] - 15:19, 20:15
**Foundation** [1] - 44:9
**four** [3] - 45:12, 57:9, 57:24
**Fourth** [5] - 1:23, 31:12, 31:18, 57:7, 57:8, 57:23
**Frances** [1] - 10:14
**frankly** [6] - 52:15, 56:7, 56:8, 56:9, 56:18, 61:9
**fraud** [34] - 2:11, 16:23, 20:16, 20:22, 21:9, 21:15, 21:16, 21:19, 34:10, 34:14, 36:21, 36:25, 38:16, 54:8, 54:25, 55:2, 55:4, 55:11, 55:12, 55:13, 55:23, 55:24, 56:1, 56:16, 56:17, 56:21, 57:15, 57:17, 57:20, 58:5, 60:25
**fraudster** [1] - 37:4
**fraudulent** [3] - 33:19, 56:21, 57:22
**Fred** [2] - 37:22, 38:1
**Frederick** [11] - 33:22, 36:19, 37:2, 38:8, 43:24, 44:3, 44:17, 44:18, 44:20, 44:21, 54:23
**freely** [1] - 33:19
**friendly** [1] - 5:25
**frightens** [1] - 48:18
**full** [2] - 26:16, 41:12
**full-fledged** [1] - 41:12
**full-time** [1] - 26:16
**fully** [3] - 27:14, 27:23, 28:13
**fund** [1] - 44:4
**funds** [1] - 34:10

## G

**Gall** [4] - 12:21, 53:25, 58:2
**Gaver** [66] - 2:7, 3:21, 3:24, 4:2, 4:5, 4:9, 4:13, 4:17, 4:21, 5:17, 5:24, 6:19, 7:3, 8:18, 8:20, 9:7, 10:14, 11:5, 13:16, 14:21, 15:21, 16:20, 18:22, 19:18, 19:23, 20:13, 20:20, 21:10, 22:8, 27:19, 33:17, 35:4, 35:5, 35:9, 37:15, 39:9, 39:21, 40:25, 42:19, 43:5, 43:14, 43:23, 45:4, 45:16, 45:17, 46:7, 46:21, 47:7, 47:20, 49:5, 49:11, 50:20, 52:8, 52:21, 52:23, 53:16, 54:15, 56:8, 57:18, 58:6, 59:10, 63:13, 63:20, 63:23, 64:23
**GAVER** [1] - 1:5
**Gaver's** [4] - 18:15, 18:25, 28:1, 43:3
**general** [3] - 24:23, 28:23, 35:18

**General** [1] - 2:22
**George** [2] - 1:17, 2:21
**Gina** [2] - 1:19, 3:14
**Giordano** [1] - 66:5
**GIORDANO** [2] - 1:23, 66:17
**given** [4] - 4:2, 28:16, 43:18, 55:8
**glad** [8] - 18:12, 22:11, 24:17, 38:25, 39:2, 50:7, 50:11, 52:23
**goal** [1] - 13:12
**goals** [1] - 13:14
**good-time** [5] - 47:1, 47:4, 47:8, 47:9, 47:14
**Government** [27] - 1:12, 2:19, 7:11, 7:12, 11:14, 20:5, 20:9, 21:25, 22:1, 22:7, 26:2, 32:11, 32:13, 32:14, 33:4, 33:5, 33:7, 33:8, 34:20, 34:21, 41:8, 43:11, 45:6, 47:6, 47:13, 64:2, 64:3
**Government's** [6] - 8:24, 9:3, 20:3, 25:15, 47:23, 48:4
**graduate** [2] - 44:24, 55:21
**Grant** [4] - 19:18, 20:2, 20:23, 21:12
**Gray** [20] - 1:13, 2:18, 2:23, 7:12, 9:6, 19:6, 21:3, 21:25, 22:6, 22:11, 24:15, 25:23, 30:1, 35:1, 38:5, 38:24, 41:9, 46:4, 47:2, 64:2
**GRAY** [45] - 2:5, 2:17, 3:4, 3:11, 7:13, 7:24, 9:10, 10:7, 10:9, 10:19, 19:7, 22:1, 22:17, 22:21, 23:3, 23:8, 23:10, 23:12, 23:15, 24:18, 24:23, 25:7, 25:10, 25:16, 25:18, 25:21, 26:1, 26:22, 30:5, 30:8, 30:18, 31:8, 32:16, 32:20, 33:5, 33:8, 33:12, 33:24, 34:7, 35:3, 36:8, 41:10, 49:25, 50:4, 64:3
**gray** [1] - 49:24
**Gray's** [2] - 55:16, 56:2
**great** [2] - 25:21, 38:18
**greater** [1] - 13:13
**gross** [1] - 17:7
**ground** [4] - 19:14, 20:18, 31:20, 32:6
**grounds** [1] - 20:17
**grouping** [1] - 16:21
**GTI** [2] - 19:20, 20:16
**GTI's** [1] - 21:12
**guarantee** [2] - 42:8, 47:7
**guess** [1] - 45:16
**guide** [1] - 12:4
**guideline** [12] - 7:16, 12:22, 12:25, 13:10, 15:13, 16:19, 18:6, 18:8, 21:23, 54:1, 58:1, 59:16
**guidelines** [20] - 11:13, 11:18, 11:19, 11:20, 11:23, 11:24, 12:2, 12:9, 13:4, 19:8, 20:19, 45:14, 45:15, 46:2, 56:8, 56:9, 56:10, 59:17, 59:23, 60:1
**guilty** [5] - 2:8, 2:10, 12:13, 17:3, 60:25
**gun** [3] - 58:14, 58:16

## H

**habitation** [1] - 29:9

**Hale** [1] - 1:15
**half** [6] - 18:7, 18:8, 47:3, 47:14, 54:14, 55:24
**hand** [1] - 25:22
**handle** [1] - 31:6
**handled** [1] - 36:3
**hands** [1] - 46:7
**hands-on** [1] - 46:7
**harassment** [2] - 17:24, 20:25
**hard** [5] - 32:25, 37:12, 46:17, 54:15, 61:22
**hard-working** [2] - 32:25, 37:12
**harm** [1] - 56:3
**harsh** [1] - 40:18
**hates** [1] - 28:8
**head** [1] - 37:3
**health** [17] - 4:3, 31:10, 31:14, 40:23, 41:1, 41:13, 48:21, 49:1, 55:1, 56:14, 59:7, 59:15, 60:17, 61:14, 62:14, 62:16
**hear** [10] - 18:12, 22:11, 24:17, 38:25, 39:2, 42:20, 50:8, 50:11, 52:23, 56:15
**heard** [7] - 19:6, 21:7, 39:7, 42:12, 42:15, 45:7, 46:1
**hears** [1] - 46:19
**heart** [1] - 14:6
**heating** [2] - 27:17, 27:23
**Heike** [1] - 32:1
**held** [4] - 43:17, 44:16, 44:23, 66:10
**help** [2] - 41:1, 59:8
**helpful** [1] - 59:23
**henceforth** [1] - 11:24
**hereby** [1] - 66:7
**Herman** [3] - 20:14, 35:8, 35:9
**High** [2] - 44:5, 44:15
**higher** [3] - 56:9, 56:11, 59:25
**highlighted** [1] - 36:14
**highly** [2] - 4:11, 55:7
**highly-respected** [2] - 4:11, 55:7
**himself** [2] - 43:16, 43:19
**history** [7] - 13:6, 17:22, 18:5, 21:22, 36:10, 54:5, 54:21
**hit** [1] - 57:18
**hits** [1] - 57:15
**hold** [7] - 22:23, 25:17, 39:13, 48:17, 49:21, 52:12, 53:4
**holding** [1] - 61:8
**Holocaust** [1] - 44:11
**home** [1] - 59:12
**Honor** [78] - 2:5, 2:17, 3:1, 3:7, 3:11, 3:17, 3:20, 4:1, 4:15, 7:14, 7:18, 8:8, 9:13, 10:7, 13:22, 14:18, 18:14, 19:3, 19:7, 21:5, 22:1, 22:4, 22:17, 23:14, 23:23, 24:18, 25:10, 25:16, 25:22, 30:5, 31:8, 33:12, 35:22, 39:4, 39:5, 39:6, 39:10, 39:20, 39:23, 40:5, 40:12, 40:17, 40:22, 40:24, 41:7, 41:10, 41:16, 41:24, 42:18, 43:1, 43:5, 43:10, 43:12, 43:23, 44:16, 44:22, 44:25,

45:1, 45:5, 45:7, 45:14, 45:24, 46:3, 46:22, 47:5, 47:16, 49:5, 49:20, 49:25, 50:13, 51:16, 51:22, 53:11, 62:6, 64:3, 64:7, 64:19
**HONORABLE** [1] - 1:10
**Honorable** [3] - 2:2, 2:3, 65:10
**Hood** [6] - 33:21, 33:22, 34:4, 36:24, 44:1, 44:23
**hope** [1] - 46:22
**hopeful** [1] - 47:8
**Hospital** [1] - 43:24
**hour** [1] - 29:19
**house** [2] - 21:9, 26:6
**housed** [1] - 25:2
**housekeeping** [2] - 13:15, 14:21
**housing** [1] - 26:9
**Housing** [1] - 2:21
**hub** [1] - 58:20
**human** [1] - 29:9

**I**

**IAN** [1] - 1:5
**idea** [1] - 47:10
**identified** [1] - 28:6
**identify** [3] - 2:15, 33:3, 37:18
**identity** [1] - 55:11
**ill** [2] - 18:19, 18:22
**immediate** [1] - 20:21
**immediately** [4] - 39:11, 39:12, 62:1, 63:8
**impact** [2] - 37:1, 48:12
**impede** [1] - 17:15
**impeded** [1] - 17:14
**important** [2] - 57:13, 60:19
**impose** [6] - 12:14, 13:9, 13:12, 19:4, 47:10, 63:3
**imposed** [3] - 15:11, 31:4, 57:8
**imposing** [2] - 12:10, 15:1
**imposition** [1] - 15:5
**imprisonment** [1] - 45:13
**improve** [1] - 30:14
**improvement** [1] - 28:15
**improvements** [1] - 30:15
**IN** [1] - 1:1
**inadequate** [1] - 27:17
**Inc** [1] - 33:17
**incarcerating** [1] - 58:22
**incarceration** [1] - 38:22
**include** [6] - 12:13, 13:3, 13:5, 15:8, 15:11, 62:22
**included** [7] - 20:6, 28:14, 36:14, 37:16, 50:24, 51:14, 61:6
**includes** [2] - 51:12, 51:13
**including** [3] - 16:15, 19:12, 24:6
**increase** [2] - 17:5, 17:6
**increased** [1] - 17:1
**increasingly** [1] - 29:7
**incur** [1] - 62:19

**indeed** [4] - 21:16, 40:2, 43:4, 59:6
**indicate** [3] - 13:11, 26:11, 63:2
**indicated** [6] - 9:6, 9:7, 28:2, 31:22, 32:21, 60:19
**indicates** [3] - 28:13, 33:13, 35:6
**indication** [1] - 38:19
**Indictment** [2] - 2:10, 15:14
**indirect** [1] - 61:7
**individual** [1] - 36:7
**individualized** [1] - 58:3
**individuals** [3] - 21:1, 37:8, 55:16
**inevitably** [1] - 20:15
**information** [13] - 8:5, 15:15, 15:19, 16:1, 16:5, 16:14, 16:15, 17:16, 27:13, 29:16, 31:11, 32:5, 64:12
**informed** [1] - 8:18
**initial** [2] - 17:8, 31:24
**inmates** [2] - 26:9, 27:18
**inquire** [1] - 19:23
**inquiries** [3] - 4:10, 35:16, 35:24
**inspections** [1] - 28:4
**Inspector** [1] - 2:22
**installation** [1] - 28:14
**institution** [1] - 37:1
**institutions** [1] - 36:22
**instructions** [1] - 52:1
**intend** [2] - 28:25, 49:7
**intent** [1] - 9:8
**intentionally** [1] - 17:3
**interesting** [1] - 43:11
**intimidation** [2] - 20:11, 20:25
**intolerable** [1] - 29:8
**introduced** [3] - 20:3, 20:4, 32:13
**intrusive** [1] - 29:8
**invested** [1] - 27:22
**investigation** [7] - 4:21, 11:16, 13:17, 16:6, 16:8, 16:20, 21:21
**involve** [3] - 34:10, 35:25, 36:4
**involved** [8] - 16:21, 17:2, 31:17, 36:8, 54:10, 54:16, 58:24, 61:2
**involving** [6] - 18:16, 31:16, 35:21, 36:6, 55:18, 57:15
**irritating** [1] - 29:7
**issue** [7] - 9:1, 11:1, 17:19, 32:7, 50:7, 52:5, 63:1
**issued** [4] - 11:9, 11:11, 15:17, 50:19
**issues** [12] - 13:7, 27:2, 28:5, 28:22, 31:10, 32:24, 41:1, 55:11, 56:14, 59:15, 60:24
**itemized** [1] - 24:6
**IZANT** [1] - 64:7
**Izant** [4] - 1:13, 2:20, 2:24, 64:4

**J**

**James** [1] - 22:18
**January** [6] - 11:10, 11:21, 28:6, 34:2, 34:4
**Jeff** [2] - 2:20, 38:5

**Jefferson** [2] - 1:13, 2:18
**Jeffrey** [1] - 1:13
**jettison** [1] - 63:20
**job** [4] - 39:8, 43:7, 53:17, 64:6
**jobs** [1] - 37:23
**jour** [1] - 30:10
**judge** [5] - 15:4, 16:9, 31:19, 56:13, 62:24
**Judge** [2] - 15:17, 58:16
**judges** [4] - 12:1, 12:9, 12:22, 59:20
**Judgment** [3] - 9:21, 15:8, 63:14
**judicial** [1] - 17:18
**Judicial** [1] - 66:11
**June** [3] - 26:15, 27:8, 28:7, 29:11, 42:25
**jury** [13] - 2:8, 2:9, 4:19, 8:16, 8:18, 8:21, 8:22, 12:13, 21:8, 21:17, 43:9, 53:20, 60:25
**justice** [6] - 7:20, 17:13, 17:15, 18:12, 19:10, 19:15
**Justice** [3] - 30:2, 45:8, 45:12

**K**

**keep** [3] - 10:25, 28:25, 57:21
**keeping** [2] - 38:12, 40:13
**Kelli** [1] - 38:5
**Kevin** [1] - 42:22
**key** [2] - 11:8, 12:17
**kind** [7] - 6:25, 14:9, 30:11, 31:11, 38:21, 59:11, 59:12
**kinds** [5] - 5:20, 13:7, 55:8, 59:5, 60:24
**kitchen** [4] - 28:12, 28:13, 28:17, 46:13
**Kiwanis** [1] - 44:13
**known** [2] - 48:9, 50:8
**knows** [4] - 35:22, 39:23, 50:17, 55:11

**L**

**label** [1] - 25:18
**laid** [1] - 20:9
**large** [4] - 36:1, 36:5, 50:17, 61:22
**largest** [1] - 54:8
**last** [2] - 42:15, 45:7
**latter** [2] - 25:3, 31:25
**laundering** [4] - 2:12, 16:22, 17:9, 61:1
**law** [2] - 14:23, 64:11
**lawyer** [5] - 4:9, 6:25, 18:23, 52:17, 55:23
**lead** [2] - 20:15, 43:16
**leadership** [1] - 36:19
**Leadership** [1] - 44:24
**least** [10] - 21:7, 21:15, 27:18, 40:7, 45:11, 46:3, 46:5, 47:18, 61:1, 62:8
**Lee** [1] - 17:25
**left** [1] - 61:5
**legal** [1] - 40:10

**legally** [1] - 29:21
**legitimate** [2] - 35:16, 38:6
**length** [1] - 53:9
**lengthy** [1] - 53:7
**less** [1] - 16:25
**letter** [6] - 22:17, 25:11, 26:11, 29:17, 39:22, 50:17
**level** [25] - 7:19, 8:5, 16:25, 17:1, 17:5, 17:6, 17:8, 17:11, 17:12, 17:20, 18:4, 18:11, 19:4, 21:22, 29:6, 29:9, 29:11, 37:17, 46:17, 55:11, 55:12, 56:17, 57:16, 58:4
**levels** [2] - 29:13, 29:23
**LEVIN** [35] - 3:20, 4:1, 4:15, 7:18, 7:23, 8:2, 8:8, 9:13, 14:18, 18:14, 21:5, 22:4, 39:4, 39:15, 39:19, 40:2, 40:4, 40:22, 41:7, 41:16, 41:18, 41:24, 42:2, 42:6, 42:9, 42:11, 42:17, 43:1, 47:12, 48:20, 48:24, 49:5, 52:21, 63:25, 64:19
**Levin** [33] - 1:15, 3:21, 3:23, 4:7, 4:8, 4:14, 5:3, 7:15, 9:6, 9:11, 9:12, 14:14, 18:13, 19:5, 21:4, 22:3, 22:7, 24:10, 25:13, 39:1, 41:15, 42:5, 48:19, 49:18, 50:10, 52:9, 52:12, 52:19, 55:3, 55:9, 63:19, 63:22, 64:17
**Levin's** [1] - 56:5
**lie** [2] - 61:5, 61:12
**lied** [4] - 17:17, 61:3, 61:4
**lies** [1] - 18:16
**life** [6] - 54:25, 55:13, 55:23, 57:20, 59:11, 61:5
**light** [5] - 16:24, 41:11, 49:6, 51:17, 52:16
**limited** [1] - 16:14
**Lindsay** [2] - 37:23, 38:2
**line** [3] - 9:19, 33:18, 50:19
**lines** [1] - 62:20
**list** [1] - 13:18
**listed** [3] - 13:8, 44:25, 63:7
**literally** [2] - 32:22, 54:17
**Litigation** [1] - 52:6
**live** [4] - 44:12, 58:7, 59:12
**lived** [3] - 46:7, 46:18, 59:10
**lives** [2] - 46:17, 59:11
**living** [7] - 29:18, 32:1, 46:9, 59:2, 59:9, 61:11, 61:12
**living-room** [1] - 29:18
**located** [1] - 27:11
**Loi** [4] - 1:18, 3:3, 3:4, 3:5
**Lombard** [1] - 1:24
**look** [14] - 5:1, 5:2, 5:24, 6:22, 12:2, 37:14, 39:20, 45:16, 54:4, 57:4, 57:5, 57:24
**looked** [7] - 4:23, 5:6, 5:10, 5:11, 24:16, 45:19, 58:15
**looking** [4] - 23:23, 29:16, 45:18, 55:14
**Los** [1] - 59:22
**loss** [4] - 16:24, 35:21, 36:1, 59:20
**losses** [4] - 35:25, 36:4, 36:9, 38:18

**lost** [1] - 37:23
**loved** [1] - 40:13
**low** [1] - 45:14
**lower** [3] - 36:9, 60:1
**lowest** [1] - 17:22
**Lucas** [2] - 32:21, 32:23
**luck** [1] - 64:23
**lung** [1] - 31:22
**lungs** [1] - 46:20
**lying** [1] - 21:11

## M

**Madam** [9] - 9:21, 9:25, 10:25, 23:21, 51:2, 51:12, 51:24, 60:19, 63:8
**Madoff** [7] - 36:17, 42:12, 42:15, 42:20, 42:22, 55:10
**mail** [1] - 32:20
**mails** [2] - 34:24, 37:14
**major** [1] - 29:23
**majority** [1] - 33:15
**male** [2] - 27:10, 41:21
**man** [3] - 37:2, 58:14, 58:15
**manages** [1] - 40:15
**mandated** [4] - 16:17, 57:9, 58:1, 58:2
**mandatory** [3] - 11:20, 12:3, 58:13
**manner** [1] - 40:7
**March** [1] - 32:2
**mark** [1] - 25:14
**Mark** [2] - 2:7, 3:21
**MARK** [1] - 1:5
**marked** [2] - 15:25, 34:19
**Marshals** [4] - 26:5, 26:6, 26:8, 30:16
**Martin** [1] - 66:5
**MARTIN** [2] - 1:23, 66:17
**Marvin** [1] - 26:20
**MARYLAND** [1] - 1:1
**Maryland** [9] - 1:7, 1:24, 7:2, 26:4, 42:20, 42:22, 44:24, 54:23, 66:7
**Massachusetts** [2] - 41:5, 60:22
**material** [1] - 51:14
**MATTER** [1] - 1:9
**matter** [22] - 4:14, 4:19, 8:17, 9:1, 10:9, 14:21, 18:10, 20:7, 21:25, 24:5, 24:6, 30:25, 48:18, 50:23, 54:25, 56:11, 56:12, 56:19, 59:5, 61:19, 64:2, 66:10
**matters** [4] - 13:15, 19:23, 21:24, 22:2
**McClure** [1] - 1:13
**mean** [15] - 23:2, 27:1, 36:15, 36:21, 36:23, 36:25, 37:5, 37:8, 37:11, 37:16, 41:11, 48:3, 48:10, 48:17, 54:17
**meaning** [1] - 12:1
**means** [5] - 15:21, 17:2, 17:4, 33:19, 61:11
**meant** [1] - 12:4
**mechanical** [1] - 1:21
**medication** [4] - 13:21, 13:25, 14:9, 14:15
**medications** [3] - 13:18, 13:23, 62:16

**member** [1] - 16:12
**members** [3] - 15:23, 16:11, 40:8
**memo** [8] - 19:8, 20:6, 20:10, 36:15, 38:1, 43:20, 45:1, 47:1
**memoranda** [1] - 34:21
**memorandum** [7] - 24:15, 24:21, 26:7, 28:11, 29:10, 34:23, 39:1
**Memorial** [1] - 43:24
**memory** [1] - 36:4
**memos** [1] - 11:15
**men** [4] - 58:8, 58:9, 58:12, 58:25
**mental** [15] - 40:23, 41:1, 41:13, 48:21, 48:25, 55:1, 56:14, 59:7, 59:15, 60:17, 61:9, 61:14, 62:13, 62:14, 62:16
**mentioned** [3] - 32:2, 44:22, 57:23
**Merit** [1] - 66:5
**Merrill** [2] - 42:22, 42:24
**message** [6] - 34:22, 35:3, 47:16, 47:19, 48:14, 59:3
**Mexico** [1] - 32:15
**mice** [1] - 46:9
**microphone** [1] - 4:25
**mid** [1] - 59:25
**middle** [1] - 35:13
**Middletown** [2] - 44:5, 44:15
**might** [3] - 31:15, 45:12, 54:8
**mildly** [1] - 48:17
**miles** [1] - 29:19
**military** [2] - 41:25, 42:4
**million** [16] - 16:25, 17:7, 27:22, 34:12, 34:15, 35:21, 35:25, 36:4, 38:17, 50:20, 54:16, 54:17, 54:20, 55:25, 61:2
**millions** [2] - 42:13
**mind** [1] - 43:10
**minimum** [2] - 41:21, 58:13
**minus** [1] - 47:14
**minute** [3] - 4:6, 22:23, 55:2
**minutes** [3] - 8:7, 35:11, 62:3
**missed** [1] - 34:24
**mistakenly** [1] - 37:25
**mistakes** [1] - 6:18
**misunderstood** [1] - 46:3
**mom** [1] - 35:7
**moment** [3] - 8:13, 17:19, 33:9
**money** [17] - 2:12, 16:22, 17:9, 33:18, 34:13, 43:12, 43:15, 43:18, 45:3, 54:10, 54:18, 55:8, 57:20, 58:24, 61:1, 62:7, 63:4
**monitor** [1] - 26:16
**monthly** [3] - 28:4, 51:25, 52:2
**months** [15] - 18:6, 20:21, 21:23, 27:14, 27:17, 27:20, 28:1, 46:12, 54:1, 60:4, 60:6, 60:9, 60:10, 60:12
**months'** [1] - 38:22
**morning** [4] - 3:7, 14:3, 15:10, 63:15
**most** [5] - 26:14, 27:8, 28:17, 39:7, 58:20
**mostly** [1] - 34:23

**mother** [2] - 10:14, 35:5
**MR** [87] - 2:5, 2:17, 3:4, 3:11, 3:20, 4:1, 4:15, 7:13, 7:18, 7:23, 7:24, 8:2, 8:8, 9:10, 9:13, 10:7, 10:9, 10:19, 14:18, 18:14, 19:7, 21:5, 22:1, 22:4, 22:17, 22:21, 23:3, 23:8, 23:10, 23:11, 23:12, 23:14, 23:15, 24:18, 24:23, 25:7, 25:10, 25:16, 25:18, 25:21, 26:1, 26:22, 30:5, 30:8, 30:18, 31:8, 32:16, 32:20, 33:5, 33:8, 33:12, 33:24, 34:7, 35:3, 36:8, 39:4, 39:15, 39:19, 40:2, 40:4, 40:22, 41:7, 41:10, 41:16, 41:18, 41:24, 42:2, 42:6, 42:9, 42:11, 42:17, 43:1, 47:12, 48:20, 48:24, 49:5, 49:25, 50:4, 50:13, 51:1, 51:16, 51:22, 52:21, 63:25, 64:3, 64:7, 64:19
**multistep** [1] - 12:23
**Museum** [1] - 44:11
**music** [1] - 29:18
**must** [3] - 12:9, 48:5, 58:6
**Myers** [1] - 18:1

## N

**named** [2] - 36:7, 37:23
**names** [1] - 40:21
**Naples** [2] - 44:11, 54:24
**nationwide** [1] - 59:19
**nature** [4] - 13:5, 26:1, 54:5, 54:6
**nearly** [1] - 61:2
**necessarily** [2] - 28:10, 36:22
**necessary** [4] - 13:13, 46:5, 49:19, 62:15
**need** [15] - 14:21, 28:21, 29:1, 38:18, 48:13, 48:25, 52:13, 53:18, 54:25, 55:1, 57:22, 58:16, 59:7, 59:8, 65:7
**needed** [2] - 26:23, 28:5
**needs** [1] - 63:4
**neighborhood** [2] - 58:17, 58:18
**never** [3] - 32:2, 47:9, 53:12
**new** [2] - 28:14, 62:19
**New** [1] - 45:9
**News** [1] - 38:8
**next** [4] - 35:10, 40:5, 40:14, 46:13
**nice** [7] - 2:23, 2:24, 2:25, 3:5, 3:8, 3:16, 3:23
**nicknamed** [1] - 48:15
**night** [1] - 29:14
**nine** [3] - 7:23, 7:24, 20:21
**noise** [5] - 29:6, 29:9, 29:11, 29:23, 46:17
**non** [1] - 8:23
**non-forfeiture** [1] - 8:23
**none** [1] - 7:13
**North** [7] - 41:5, 41:12, 41:22, 42:16, 56:15, 60:20, 60:21
**NORTHERN** [1] - 1:2
**Note** [1] - 19:10
**note** [12] - 7:15, 8:10, 8:15, 9:5, 9:15, 13:16, 27:7, 28:8, 39:11, 51:21, 63:13, 63:22
**noted** [10] - 8:25, 11:22, 12:21, 13:20, 19:8, 21:19, 29:3, 38:7, 55:16, 57:8
**notes** [4] - 32:11, 32:19, 47:25, 50:22
**notice** [1] - 4:7
**noticed** [1] - 31:22
**noting** [1] - 51:13
**notion** [1] - 30:9
**notwithstanding** [1] - 46:16
**November** [5] - 25:3, 25:5, 25:9, 31:2, 60:13
**Number** [9] - 2:7, 9:16, 23:22, 24:16, 39:2, 47:24, 50:22, 51:7, 55:19
**number** [8] - 27:6, 35:24, 37:9, 42:21, 58:8, 58:9, 58:15, 58:24
**numbers** [1] - 37:17

## O

**oath** [2] - 17:18, 21:11
**object** [1] - 47:18
**objection** [4] - 7:19, 18:13, 21:19, 41:8
**objections** [3] - 7:10, 7:11, 7:16
**obstruct** [1] - 17:14
**obstructed** [1] - 17:14
**obstruction** [8] - 7:20, 8:6, 17:12, 18:11, 19:9, 19:14, 21:11, 21:18
**obtained** [1] - 33:18
**obviously** [3] - 26:1, 34:8, 35:20
**occasion** [3] - 4:20, 5:1, 5:2
**occupied** [2] - 27:12, 54:22
**occur** [1] - 28:9
**October** [3] - 22:21, 24:8, 50:17
**OF** [4] - 1:1, 1:3, 2:1, 66:1
**offense** [13] - 13:6, 16:25, 17:1, 17:2, 17:8, 17:20, 18:4, 18:18, 19:13, 21:21, 54:5, 54:7
**offenses** [2] - 18:18, 54:13
**office** [5] - 15:19, 35:23, 35:25, 36:3, 45:10
**Office** [4] - 2:22, 15:19, 52:6, 54:12
**office's** [1] - 27:13
**Officer** [1] - 1:19
**officer** [8] - 3:15, 4:11, 4:22, 29:21, 52:1, 62:15, 62:21, 63:1
**OFFICER** [2] - 3:17, 62:6
**offices** [1] - 35:24
**OFFICIAL** [2] - 66:1, 66:18
**officials** [2] - 15:22, 31:25
**OIG** [1] - 1:17
**old** [2] - 45:17, 58:12
**ON** [1] - 1:9
**once** [2] - 48:1, 64:12
**one** [37] - 5:11, 10:9, 16:12, 18:10, 22:23, 25:17, 26:14, 26:15, 27:6, 28:8, 31:16, 32:20, 33:23, 34:24, 36:6, 36:13, 39:7, 39:21, 40:3, 40:4, 40:6, 40:7, 40:16, 42:3, 42:12, 46:10, 48:10, 48:14, 53:12, 54:8, 55:11, 55:17, 60:7, 60:8, 60:10, 60:15
**one-sided** [1] - 53:12
**ones** [3] - 33:16, 34:9, 40:13
**ongoing** [1] - 27:4
**online** [1] - 29:16
**open** [2] - 17:24, 62:20
**operated** [1] - 26:3
**operation** [1] - 27:1
**operational** [1] - 26:12
**opinion** [2] - 11:11, 57:8
**opinions** [3] - 11:8, 12:18, 12:19
**opportunity** [5] - 22:6, 22:9, 24:11, 49:12, 50:1
**opposed** [1] - 57:16
**opposing** [1] - 46:25
**Order** [6] - 9:19, 9:22, 10:12, 15:9, 22:14, 63:14
**order** [13] - 8:14, 9:4, 9:5, 9:9, 9:14, 9:18, 15:18, 16:2, 16:12, 22:15, 23:5, 51:18, 61:19
**ordered** [3] - 51:24, 60:3, 60:5
**organizations** [1] - 45:3
**organize** [1] - 24:19
**originally** [1] - 33:24
**otherwise** [1] - 15:12
**outburst** [2] - 39:10, 53:3
**outbursts** [2] - 48:9, 48:10
**outlined** [1] - 53:24
**outside** [1] - 13:10
**overall** [1] - 28:16
**overcrowded** [1] - 27:6
**overdue** [1] - 35:17
**overruled** [1] - 21:19
**oversight** [2] - 26:25, 46:6
**overwhelming** [1] - 53:24
**own** [3] - 22:9, 49:13, 59:2

## P

**packet** [1] - 50:23
**page** [1] - 66:10
**Page** [7] - 16:7, 16:8, 16:19, 27:6, 28:11, 29:10, 47:24
**pages** [1] - 51:8
**paid** [6] - 19:21, 57:1, 61:20, 61:24, 62:1, 63:7
**pales** [2] - 55:25, 56:1
**panic** [1] - 61:7
**paper** [7] - 5:12, 5:14, 45:21, 46:14, 56:24
**Paper** [7] - 9:16, 23:22, 24:15, 39:1, 47:24, 50:22, 51:6
**Paragraph** [15] - 7:22, 7:25, 8:1, 8:4, 8:5, 8:6, 8:12, 13:16, 16:7, 17:16, 21:20, 48:3
**parcel** [1] - 21:16
**pardon** [3] - 5:13, 6:10, 50:3
**part** [19] - 8:24, 9:16, 10:20, 21:16,

22:21, 23:2, 25:3, 28:17, 30:4, 30:20, 31:25, 40:22, 40:23, 41:25, 45:11, 45:22, 50:25, 51:6, 55:4
**Part** [2] - 16:3, 16:6
**participate** [3] - 62:12, 62:14, 62:18
**particular** [6] - 11:19, 19:16, 20:7, 20:22, 27:5, 56:13
**particularly** [3] - 36:13, 48:11, 50:16
**parties** [2] - 10:19, 48:7
**party** [2] - 9:1, 10:11
**passed** [1] - 14:23
**passenger** [1] - 29:18
**passing** [1] - 29:18
**past** [4] - 11:9, 13:18, 31:14, 54:11
**path** [1] - 61:5
**Paul** [1] - 38:1
**Pause** [4] - 8:11, 9:24, 22:25, 23:20
**pay** [3] - 48:2, 52:2, 63:4
**payment** [1] - 61:25
**payments** [1] - 51:25
**Pelican** [1] - 10:13
**pending** [2] - 17:23, 42:25
**penny** [1] - 54:19
**people** [9] - 6:17, 16:14, 38:4, 42:14, 46:19, 48:12, 48:18, 59:7, 59:9
**per** [1] - 63:6
**perception** [1] - 36:17
**perfectly** [1] - 39:16
**performance** [1] - 26:12
**perhaps** [8] - 10:13, 15:23, 34:4, 40:9, 40:18, 43:18, 48:8, 61:6
**period** [19] - 14:9, 15:24, 33:2, 33:15, 34:15, 37:16, 43:23, 45:7, 45:15, 52:3, 60:4, 60:6, 61:12, 61:16, 61:18, 61:24, 62:10, 62:13, 62:23
**perjury** [2] - 19:11, 19:13
**permission** [1] - 4:1
**permitted** [3] - 16:12, 16:13, 26:6
**perpetrated** [1] - 56:1
**perpetuate** [1] - 21:15
**person** [3] - 43:8, 46:10, 57:15
**personal** [4] - 13:6, 34:12, 34:15, 54:21
**personally** [1] - 49:11
**persuasive** [1] - 37:19
**pertains** [1] - 19:13
**pest** [2] - 28:3, 28:4
**Phillips** [1] - 38:1
**physical** [2] - 41:1, 56:14
**physically** [1] - 52:25
**physicians** [1] - 62:17
**pictures** [1] - 45:21
**pipe** [1] - 6:3
**place** [1] - 61:15
**places** [1] - 28:9
**plastic** [1] - 46:14
**plates** [2] - 46:14, 46:15
**Plavix** [1] - 13:19
**plea** [1] - 15:13
**pluming** [1] - 28:19

**PM** [2] - 1:8
**podium** [1] - 50:9
**point** [12] - 7:17, 12:23, 21:24, 22:2, 40:5, 45:1, 46:6, 48:19, 56:2, 57:18, 64:2, 64:17
**pointed** [1] - 38:13
**points** [1] - 24:20
**police** [1] - 58:17
**policy** [1] - 15:24
**poor** [1] - 4:2
**pop** [1] - 48:16
**portion** [1] - 16:8
**portions** [1] - 20:4
**position** [2] - 44:23, 54:22
**positions** [3] - 36:18, 36:19, 44:16
**positive** [1] - 40:7
**possess** [1] - 62:23
**possible** [3] - 17:23, 41:2, 45:23
**Post** [1] - 38:9
**poster** [1] - 58:21
**Postupak** [2] - 37:15, 37:22
**potable** [1] - 29:3
**potential** [1] - 8:19
**practice** [1] - 54:14
**practicing** [1] - 55:23
**preliminary** [3] - 9:18, 9:19, 13:15
**prepared** [4] - 3:15, 4:22, 13:17, 25:11
**preparing** [1] - 15:9
**prescribed** [1] - 62:16
**present** [4] - 1:16, 26:17, 28:23, 55:5
**presentation** [2] - 24:19, 64:5
**presented** [3] - 31:11, 32:17, 54:9
**presentence** [12] - 3:15, 4:21, 11:16, 13:17, 15:15, 16:4, 16:6, 16:8, 16:20, 17:13, 21:21, 40:20
**president** [1] - 44:19
**presiding** [1] - 2:3
**pressed** [1] - 54:16
**prestigious** [3] - 44:16, 55:21, 55:22
**presume** [3] - 12:22, 58:1, 59:18
**pretty** [1] - 52:14
**previous** [1] - 4:10
**previously** [1] - 11:19
**price** [2] - 48:2, 57:1
**prison** [9] - 18:8, 40:15, 40:18, 41:12, 55:24, 61:25, 62:2, 62:8, 63:10
**prisoners** [1] - 26:7
**Prisons** [4] - 47:11, 60:6, 60:9, 65:3
**private** [4] - 16:14, 16:15, 54:14, 55:22
**privilege** [2] - 39:24, 50:15
**Probation** [2] - 1:19, 15:19
**probation** [7] - 3:15, 4:22, 29:21, 52:1, 62:15, 62:20, 63:1
**PROBATION** [2] - 3:17, 62:6
**problem** [3] - 29:23, 39:18, 41:14
**problems** [1] - 28:8
**Procedure** [1] - 63:17
**procedures** [2] - 8:19, 14:22
**proceed** [5] - 10:25, 11:4, 14:16, 14:20,

22:6
**proceeding** [6] - 17:18, 18:17, 18:19, 18:20, 19:1, 19:12
**Proceedings** [2] - 1:21, 65:12
**proceedings** [8] - 17:18, 21:10, 40:10, 50:19, 56:19, 57:1, 64:13, 66:9
**PROCEEDINGS** [1] - 2:1
**proceeds** [1] - 34:11
**process** [5] - 4:18, 8:25, 11:5, 12:23, 27:9
**produced** [1] - 1:21
**product** [1] - 61:9
**Program** [1] - 44:24
**program** [2] - 62:15, 62:19
**project** [2] - 27:24, 37:4
**prominent** [1] - 36:18
**prone** [1] - 48:10
**properly** [1] - 31:19
**properties** [1] - 9:8
**property** [1] - 10:13
**proposed** [4] - 9:4, 9:5, 22:15, 23:16
**prosecuting** [1] - 42:21
**prosecutors** [1] - 42:21
**protect** [1] - 57:23
**Protect** [3] - 14:22, 15:3, 16:16
**protecting** [1] - 43:19
**proved** [1] - 39:25
**provide** [2] - 12:4, 45:25
**provided** [2] - 25:13, 47:17
**provides** [2] - 18:5, 26:6
**provision** [1] - 19:9
**provisions** [2] - 14:24, 14:25
**PSR** [1] - 31:22
**psychological** [4] - 20:25, 60:16, 60:24, 61:13
**psychologically** [1] - 56:17
**public** [4] - 15:22, 15:23, 57:23, 59:3
**Public** [5] - 26:4, 26:9, 27:22, 29:4, 44:21
**pull** [1] - 4:24
**punish** [1] - 57:11
**punished** [1] - 57:11
**punishment** [1] - 57:12
**purely** [1] - 43:6
**purported** [1] - 18:16
**purposes** [4] - 34:15, 57:5, 57:9, 57:24
**pursuant** [4] - 12:24, 16:3, 63:16, 66:8
**pursue** [1] - 35:15
**pursuing** [1] - 35:15
**pushed** [1] - 48:1
**put** [4] - 8:17, 41:22, 48:17, 63:22
**putting** [1] - 34:22

## Q

**QAR** [9] - 26:14, 27:21, 28:3, 28:7, 28:12, 28:18, 28:22, 29:11, 46:16
**quality** [3] - 26:13, 27:8, 29:2
**quarters** [1] - 46:9

**questions** [1] - 51:20
**quickly** [2] - 25:12, 41:2
**quite** [6] - 52:15, 56:7, 56:8, 56:9, 56:18, 61:8

## R

**Raby** [1] - 57:7
**raised** [4] - 7:18, 24:21, 32:7, 32:24
**range** [17] - 12:22, 12:25, 13:1, 13:10, 15:13, 16:19, 18:6, 18:9, 21:23, 36:1, 38:17, 46:2, 54:1, 54:2, 58:1, 59:16, 59:25
**rather** [4] - 14:22, 46:13
**rating** [1] - 28:16
**RDB-17-0640** [2] - 1:4, 2:7
**read** [3] - 3:12, 24:15, 39:1
**ready** [2] - 10:25, 11:3
**Really** [1] - 59:7
**really** [7] - 19:1, 20:25, 34:17, 34:20, 53:13, 61:8, 62:24
**Realtime** [1] - 66:6
**reason** [7] - 14:16, 15:12, 29:22, 34:7, 40:23, 45:23, 59:22
**reasonable** [2] - 12:23, 58:1
**reasons** [4] - 13:11, 15:11, 38:21, 60:3
**rebuttal** [1] - 20:7
**receipts** [1] - 17:7
**received** [4] - 36:10, 44:7, 62:7
**receiving** [1] - 32:12
**recent** [5] - 26:14, 27:8, 27:14, 27:21, 28:18
**recently** [1] - 27:22
**recognize** [1] - 22:7
**recognized** [1] - 31:15
**recognizing** [1] - 45:12
**recommend** [8] - 41:21, 49:1, 56:15, 60:16, 60:18, 61:13, 62:12
**record** [18] - 2:15, 4:8, 8:17, 8:20, 9:2, 9:17, 10:10, 23:2, 24:5, 24:6, 30:1, 30:15, 36:10, 50:21, 50:23, 51:6, 58:14
**recorded** [1] - 1:21
**records** [1] - 55:16
**recovering** [1] - 32:22
**redevelopment** [1] - 37:4
**reduce** [1] - 30:23
**reference** [4] - 35:11, 46:25, 47:25, 48:7
**referenced** [4] - 9:21, 11:14, 11:16, 48:3
**referring** [1] - 50:18
**reflect** [2] - 4:8, 33:20
**reflected** [6] - 8:1, 8:4, 27:3, 29:13, 32:13, 34:5, 35:6
**reflection** [1] - 64:11
**reflects** [1] - 40:20
**Reform** [1] - 11:24
**Reformed** [2] - 43:22, 44:18
**refrain** [1] - 5:19
**regard** [1] - 24:24

**Registered** [1] - 66:5
**regret** [1] - 6:18
**regretted** [2] - 39:11, 39:12
**regulations** [1] - 66:11
**relate** [1] - 14:25
**related** [1] - 18:24
**relates** [3] - 7:22, 17:16, 18:17
**relating** [1] - 19:17
**relation** [2] - 20:22, 35:18
**relationship** [1] - 26:1
**release** [6] - 61:15, 61:18, 61:19, 62:11, 62:14, 62:24
**relevant** [2] - 19:17, 20:4
**relied** [1] - 19:16
**religiously** [1] - 30:12
**remain** [4] - 4:6, 52:24, 52:25, 62:3
**remains** [1] - 21:22
**remanded** [3] - 60:3, 60:5, 60:8
**remarks** [2] - 22:8, 35:18
**remember** [1] - 40:21
**remorse** [1] - 38:20
**rendered** [3] - 11:20, 11:25, 12:19
**renders** [1] - 29:8
**renovated** [1] - 28:13
**repair** [2] - 28:21, 28:22
**repairs** [1] - 29:1
**report** [15] - 3:15, 3:18, 4:21, 11:16, 13:17, 15:15, 16:4, 16:6, 16:9, 16:20, 17:13, 17:17, 21:21, 40:20, 46:23
**reported** [3] - 32:2, 38:8, 66:9
**REPORTER** [2] - 66:1, 66:18
**Reporter** [2] - 66:5, 66:6
**reports** [1] - 28:3
**represent** [6] - 4:9, 4:13, 40:9, 50:15, 63:18
**represented** [1] - 32:12
**representing** [1] - 54:12
**request** [3] - 23:5, 31:12, 31:13
**requesting** [1] - 51:18
**required** [2] - 12:3, 57:5
**requirements** [1] - 16:16
**requires** [1] - 15:4
**respect** [28] - 4:18, 6:2, 7:1, 7:5, 7:10, 8:1, 8:4, 8:14, 9:4, 11:4, 12:12, 16:22, 17:17, 17:24, 18:11, 21:11, 29:2, 39:17, 48:4, 55:15, 55:18, 56:5, 56:23, 58:3, 58:11, 60:23, 62:4, 64:16
**respected** [2] - 4:11, 55:7
**respectfully** [1] - 51:18
**respond** [1] - 28:4
**responsibility** [1] - 38:20
**restitution** [17] - 22:15, 23:5, 23:17, 24:12, 50:7, 51:18, 51:24, 54:18, 61:20, 61:24, 62:1, 62:8, 62:9, 62:10, 63:5
**result** [2] - 4:19, 21:9
**resulted** [3] - 20:21, 35:16, 37:5
**resulting** [1] - 28:15
**results** [1] - 47:15

**resumes** [1] - 2:3
**retained** [1] - 28:3
**retirement** [1] - 42:14
**returned** [2] - 38:3, 53:20
**returns** [1] - 19:21
**revamp** [1] - 27:23
**reveal** [1] - 57:19
**revealed** [1] - 36:20
**Revere** [1] - 10:12
**review** [11] - 4:20, 12:11, 15:22, 16:10, 16:11, 26:13, 26:14, 26:25, 27:9, 28:6, 46:7
**reviewed** [7] - 5:3, 5:10, 9:15, 9:17, 16:9, 35:22, 35:23
**revised** [1] - 16:3
**Richard** [1] - 2:3
**RICHARD** [1] - 1:10
**rights** [1] - 63:12
**rise** [4] - 2:2, 8:5, 30:20, 65:10
**RMR** [2] - 1:23, 66:17
**road** [2] - 57:16, 57:19
**Robinson** [4] - 36:7, 36:8, 55:19, 55:20
**room** [3] - 19:24, 29:18, 39:20
**Rotary** [1] - 44:17
**routinely** [5] - 14:15, 16:1, 16:3, 27:16, 31:6
**Rule** [1] - 63:16
**Rules** [1] - 63:16
**rundown** [1] - 33:1
**running** [1] - 38:12
**Rutledge** [5] - 1:18, 3:9, 9:16, 33:1, 64:9
**Rutledge's** [1] - 34:11

## S

**S/A** [2] - 3:1, 3:7
**Safety** [3] - 26:4, 26:9, 27:22
**Sam** [2] - 35:7, 48:15
**Samantha** [1] - 35:4
**San** [2] - 32:21, 32:23
**sanitation** [1] - 28:15
**Santander** [17] - 10:18, 22:19, 23:6, 23:17, 31:24, 34:13, 37:7, 37:11, 37:21, 50:1, 50:4, 50:15, 50:19, 51:19, 56:24, 61:21, 64:16
**satisfactory** [1] - 28:16
**satisfied** [1] - 30:16
**scale** [2] - 29:14, 36:16
**scheme** [3] - 34:14, 35:17, 61:1
**scholarship** [1] - 44:4
**school** [1] - 55:22
**School** [2] - 44:5, 44:15
**Schools** [1] - 44:21
**screaming** [1] - 46:20
**scrutiny** [1] - 26:25
**sealed** [2] - 16:2, 16:5
**seated** [5] - 3:21, 4:4, 4:5, 52:24, 52:25
**second** [3] - 12:18, 22:23, 25:17
**section** [1] - 15:25

**sections** [1] - 11:19
**see** [17] - 2:23, 2:24, 2:25, 3:5, 3:8, 3:16, 3:23, 10:22, 14:16, 16:12, 16:13, 16:14, 24:2, 33:12, 35:3, 37:16, 65:1
**seeing** [1] - 36:1
**seeking** [1] - 31:9
**seem** [2] - 28:21, 32:9
**send** [2] - 42:8, 65:2
**sent** [3] - 32:20, 32:23, 35:4
**sentence** [27] - 12:11, 12:13, 13:1, 13:9, 13:12, 15:6, 15:11, 24:24, 30:22, 31:4, 35:19, 36:11, 38:21, 43:5, 45:4, 47:6, 47:10, 47:13, 53:25, 54:2, 57:5, 57:8, 59:13, 59:16, 60:11, 60:15
**sentenced** [1] - 55:24
**sentences** [6] - 15:1, 55:18, 58:11, 58:14, 59:1, 60:7
**Sentencing** [5] - 11:24, 15:6, 15:15, 15:20, 16:11
**SENTENCING** [1] - 1:9
**sentencing** [31] - 2:14, 4:14, 4:18, 5:4, 6:18, 8:24, 11:4, 11:6, 11:7, 11:13, 11:15, 11:18, 13:7, 13:14, 14:17, 19:8, 20:6, 20:10, 24:15, 24:21, 34:21, 34:23, 36:15, 38:1, 39:1, 39:7, 43:20, 45:1, 46:25, 57:6, 57:10
**separate** [2] - 10:16, 10:17
**September** [1] - 27:11
**series** [1] - 51:3
**serious** [2] - 35:20, 43:4
**serve** [1] - 47:7
**served** [4] - 31:1, 44:19, 60:12, 60:15
**serves** [4] - 13:1, 40:6, 54:2
**Service** [4] - 26:5, 26:6, 26:8, 30:16
**service** [2] - 4:7, 64:21
**Services** [1] - 26:4
**session** [1] - 2:3
**set** [3] - 16:19, 54:3, 57:10
**seven** [1] - 28:1
**several** [3] - 40:14, 46:12, 46:24
**severe** [3] - 31:16, 57:4, 59:12
**severely** [1] - 59:5
**sewage** [1] - 28:20
**sexual** [1] - 17:24
**Shadow** [1] - 44:9
**shake** [1] - 53:13
**shall** [3] - 61:17, 61:24, 62:9
**shares** [1] - 46:10
**sheet** [2] - 23:19, 24:3
**shocked** [1] - 45:17
**show** [2] - 6:2, 7:5
**showers** [1] - 28:24
**shown** [1] - 38:19
**sic** [1] - 29:19
**sided** [1] - 53:12
**Siglin** [3] - 37:22, 38:1, 38:2
**sign** [2] - 9:14, 9:19
**signed** [1] - 22:13
**significant** [5] - 26:24, 28:15, 34:18,

34:24, 38:9
**significantly** [1] - 36:9
**similar** [1] - 55:16
**simple** [1] - 18:15
**simply** [3] - 18:17, 31:10, 32:5
**sitting** [3] - 39:24, 46:13, 58:19
**situation** [2] - 58:21, 59:8
**situations** [1] - 31:15
**six** [2] - 17:22, 33:15
**skeptical** [1] - 31:13
**slash** [1] - 31:23
**smaller** [1] - 36:16
**smaller-scale** [1] - 36:16
**snarky** [1] - 39:10
**someone** [4] - 31:17, 40:12, 42:21, 46:17
**sometime** [1] - 31:23
**sometimes** [1] - 37:18
**somewhat** [1] - 59:21
**soon** [3] - 20:20, 45:23, 65:3
**sophisticated** [2] - 17:2, 17:4
**sorry** [6] - 4:24, 6:1, 6:5, 8:3, 23:4, 25:20
**sort** [3] - 26:24, 35:22, 36:17
**sorts** [1] - 28:9
**source** [1] - 29:3
**Southern** [1] - 45:9
**space** [2] - 27:7, 27:13
**spanned** [1] - 61:1
**speaking** [1] - 62:5
**Special** [4] - 1:17, 1:18, 1:18, 2:21
**special** [1] - 63:6
**specifically** [8] - 11:22, 12:21, 13:19, 14:25, 15:3, 17:15, 47:25, 60:4
**spent** [2] - 31:3, 34:11
**sports** [1] - 44:5
**spread** [1] - 38:17
**Springs** [1] - 54:24
**squarely** [1] - 20:18
**staffed** [1] - 26:3
**stand** [2] - 3:24, 23:4
**standards** [2] - 26:12, 58:13
**standing** [1] - 4:6
**stands** [1] - 65:8
**start** [1] - 61:21
**started** [2] - 31:23, 61:10
**starting** [1] - 12:23
**starts** [1] - 16:7
**state** [2] - 15:3, 19:10
**statement** [7] - 15:10, 49:12, 49:16, 49:22, 52:13, 52:14, 52:15
**statements** [4] - 18:23, 18:24, 20:19
**STATES** [2] - 1:1, 1:3
**States** [27] - 2:6, 2:11, 2:13, 2:18, 2:19, 2:20, 7:13, 11:8, 11:10, 11:11, 11:12, 12:2, 12:18, 12:21, 13:2, 15:3, 15:5, 17:10, 45:8, 50:10, 54:3, 57:6, 57:10, 57:25, 58:20, 66:6, 66:12
**stay** [1] - 28:1

**staying** [1] - 38:11
**stealing** [1] - 34:14
**stenographically** [1] - 66:9
**stenographically-reported** [1] - 66:9
**stenography** [1] - 1:21
**step** [1] - 16:18
**steps** [1] - 63:22
**Steve** [1] - 3:21
**Steven** [1] - 1:15
**still** [5] - 12:9, 16:17, 17:24, 36:2, 53:10
**stole** [1] - 42:13
**stood** [1] - 19:23
**stopped** [1] - 56:22
**store** [1] - 38:11
**stormed** [1] - 19:24
**straight** [2] - 7:8, 34:9
**Street** [1] - 1:24
**streets** [1] - 59:2
**strongly** [3] - 5:19, 6:2, 20:18
**struck** [1] - 45:19
**studies** [1] - 59:19
**stunned** [1] - 53:10
**subject** [4] - 12:11, 15:22, 26:11, 59:6
**submission** [6] - 8:16, 9:3, 23:2, 47:23, 48:4, 55:17
**submissions** [1] - 23:18
**submit** [2] - 38:21, 62:17
**submitted** [3] - 3:9, 11:15, 22:18
**suborn** [1] - 19:11
**suborning** [1] - 19:11
**substance** [3] - 62:17, 62:18, 62:25
**substantial** [7] - 27:1, 36:11, 38:19, 45:6, 45:10, 45:11, 45:13, 45:15
**Suburban** [1] - 44:17
**success** [3] - 36:18, 37:14, 38:6
**successful** [1] - 37:12
**suffice** [1] - 39:25
**sufficient** [1] - 13:13
**suggest** [1] - 6:2
**suggested** [1] - 62:22
**suggests** [2] - 46:16, 55:3
**summer** [2] - 27:17, 27:24
**supervised** [6] - 61:15, 61:18, 61:19, 62:11, 62:13, 62:23
**supplement** [1] - 34:21
**support** [6] - 3:10, 9:17, 23:18, 31:12, 32:5, 44:14
**supported** [1] - 44:10
**supposed** [1] - 33:25
**Supreme** [8] - 11:9, 11:11, 11:12, 11:17, 11:22, 12:8, 12:18, 12:20
**surprised** [2] - 56:7, 56:9
**survey** [1] - 29:12
**surveys** [1] - 29:11
**survive** [1] - 40:15
**Swillo** [8] - 1:19, 3:14, 3:16, 4:22, 13:17, 40:21, 62:2, 62:9
**Swillo's** [1] - 15:18
**system** [4] - 27:24, 59:6, 61:25, 62:2

**systems** [1] - 28:20

**T**

**table** [1] - 2:20
**tablets** [1] - 32:4
**talks** [1] - 55:9
**Tarnow** [4] - 20:14, 35:8, 35:14, 48:1
**technical** [1] - 44:14
**Technologies** [1] - 33:17
**Technology** [2] - 44:15, 44:22
**telephone** [1] - 9:11
**temperature** [1] - 28:24
**temperature-controlled** [1] - 28:24
**temperatures** [1] - 27:16
**ten** [1] - 36:3
**tendency** [2] - 48:6, 48:8
**tender** [1] - 33:3
**tendered** [4] - 10:6, 25:24, 33:11, 34:25
**tending** [1] - 38:11
**tends** [1] - 48:16
**term** [4] - 34:1, 45:10, 45:13, 62:22
**terminated** [1] - 19:24
**terms** [11] - 11:1, 17:16, 30:22, 38:17, 54:10, 54:21, 55:14, 56:17, 59:19, 61:17, 62:24
**terrible** [1] - 37:1
**terrorism** [3] - 20:12, 20:25, 35:12
**testified** [2] - 19:18, 19:20
**testing** [1] - 62:18
**text** [7] - 34:22, 34:24, 35:3, 35:7, 47:16, 47:19, 48:14
**themselves** [2] - 2:15, 19:9
**therapy** [1] - 32:22
**thereto** [2] - 23:25, 24:16
**thin** [2] - 27:18, 27:19
**thinks** [2] - 47:6, 47:13
**third** [4] - 4:8, 9:1, 10:11, 48:7
**third-party** [2] - 9:1, 10:11
**thirty** [4] - 7:23, 7:24, 8:2, 8:3
**thirty-nine** [2] - 7:23, 7:24
**Thornton** [4] - 19:18, 20:2, 20:23, 21:12
**thorough** [2] - 31:6, 55:17
**thousand** [1] - 63:7
**thousands** [2] - 42:13, 42:14
**threats** [3] - 21:1, 61:7
**three** [8] - 27:9, 37:21, 45:10, 45:12, 52:3, 61:16, 61:18
**three-day** [1] - 27:9
**throughout** [2] - 12:1, 29:12
**thrust** [1] - 48:13
**today** [11] - 2:14, 5:25, 9:20, 13:21, 13:25, 14:17, 15:10, 39:5, 40:4, 43:17, 50:19
**together** [1] - 34:23
**tomorrow** [2] - 15:10, 63:15
**tonight** [1] - 14:1
**took** [4] - 13:25, 36:17, 42:14, 46:3
**top** [1] - 46:20
**total** [11] - 17:20, 18:4, 21:12, 21:21, 27:10, 27:12, 33:13, 60:4, 60:11, 61:12, 61:18
**totally** [3] - 10:10, 30:16, 58:21
**touch** [2] - 40:9, 40:13
**tough** [4] - 39:5, 39:9, 59:8, 64:24
**towards** [2] - 62:8, 63:5
**tracking** [1] - 28:25
**transcript** [3] - 1:21, 66:9, 66:10
**transferred** [1] - 25:6
**translates** [2] - 18:7, 60:14
**transmitted** [1] - 48:15
**treat** [1] - 30:12
**treated** [1] - 59:4
**treating** [1] - 62:17
**treatment** [7] - 32:13, 49:1, 60:17, 61:14, 62:14, 62:18, 65:7
**trial** [20] - 2:9, 4:19, 8:18, 8:21, 19:17, 20:1, 21:8, 32:18, 38:8, 39:24, 42:25, 45:20, 49:6, 53:7, 53:9, 53:19, 53:20, 63:21
**tried** [2] - 38:6, 51:1
**triggered** [1] - 56:25
**troubling** [2] - 36:13, 37:6
**true** [2] - 11:6, 66:8
**trustee** [2] - 44:20, 44:23
**Trustees** [3] - 33:22, 36:25, 55:8
**try** [6] - 21:14, 21:18, 52:2, 55:5, 65:1, 65:3
**trying** [5] - 30:14, 35:15, 56:19, 57:19, 59:20
**tumbling** [1] - 21:9
**tune** [1] - 21:13
**turn** [1] - 24:23
**turned** [1] - 20:20
**twice** [1] - 54:12
**two** [17] - 4:9, 4:10, 7:19, 8:5, 10:19, 11:8, 11:18, 12:17, 12:19, 13:20, 17:5, 17:6, 17:12, 18:11, 19:4, 36:12, 60:22
**two-level** [7] - 7:19, 8:5, 17:5, 17:6, 17:12, 18:11, 19:4
**type** [1] - 32:15
**types** [1] - 13:3
**Tyson** [3] - 15:9, 25:14, 62:4

**U**

**U.S** [16] - 1:13, 1:13, 1:19, 1:23, 3:14, 4:12, 4:22, 7:1, 14:23, 15:6, 15:19, 15:20, 16:11, 30:16, 52:6, 54:12
**U.S.C** [1] - 66:8
**Ulwick** [13] - 22:18, 22:20, 23:7, 23:9, 50:1, 50:4, 50:7, 50:8, 50:10, 50:12, 50:21, 51:15, 64:15
**ULWICK** [6] - 23:11, 23:14, 50:13, 51:1, 51:16, 51:22
**Ulwick's** [1] - 56:23
**under** [13] - 12:7, 13:2, 17:18, 18:8, 21:11, 29:22, 34:17, 54:3, 55:14, 57:25, 61:25, 62:2
**understatement** [1] - 61:12
**unfit** [1] - 29:8
**unfortunately** [1] - 34:22
**Unit** [1] - 52:6
**unit** [1] - 29:8
**UNITED** [2] - 1:1, 1:3
**United** [29] - 2:6, 2:11, 2:13, 2:18, 2:19, 2:20, 7:13, 11:8, 11:10, 11:11, 11:12, 12:2, 12:18, 12:21, 13:2, 15:2, 15:5, 17:10, 43:22, 44:18, 45:8, 50:10, 54:3, 57:6, 57:10, 57:25, 58:20, 66:6, 66:12
**university** [1] - 55:22
**unless** [1] - 51:19
**unravelling** [1] - 61:10
**unusual** [2] - 28:10, 36:5
**unwarranted** [2] - 13:7, 55:15
**up** [12] - 17:11, 19:23, 25:6, 25:22, 33:8, 37:19, 41:18, 42:17, 44:1, 45:8, 58:15, 64:12
**upheld** [2] - 11:12, 11:17
**upholding** [1] - 11:23
**upper** [1] - 38:16
**upward** [1] - 18:11
**uses** [2] - 4:2, 34:12
**USMS** [1] - 27:21
**utilized** [1] - 27:14

**V**

**vacation** [1] - 32:15
**vacuum** [1] - 29:18
**variance** [7] - 24:25, 30:11, 30:20, 31:9, 31:19, 32:6, 45:25
**ventilation** [1] - 27:23
**verbalize** [1] - 61:22
**verdict** [4] - 12:12, 53:21, 53:23
**verify** [1] - 51:5
**vermin** [3] - 28:2, 28:4, 28:8
**version** [1] - 36:16
**versus** [3] - 2:7, 11:11, 12:21
**VI** [1] - 17:23
**victim** [2] - 37:7, 50:16
**victimized** [1] - 37:8
**victims** [1] - 37:9
**view** [6] - 7:17, 21:25, 22:3, 55:4, 64:2, 64:18
**villa** [1] - 32:23
**violation** [3] - 2:11, 2:13, 17:10
**violent** [1] - 58:20
**visit** [2] - 40:6, 45:18
**visited** [1] - 49:2

**W**

**wages** [1] - 63:11
**WAHL** [1] - 3:1
**Wahl** [4] - 1:17, 2:21, 2:25, 64:8

**wait** [2] - 10:22, 22:23
**waive** [2] - 8:20, 61:25
**waived** [1] - 8:21
**wake** [1] - 61:6
**wants** [4] - 40:25, 45:23, 63:23
**warmth** [1] - 27:19
**warn** [1] - 48:6
**Washington** [3] - 15:7, 15:20, 15:23
**water** [2] - 29:2, 29:3
**ways** [1] - 40:3
**week** [2] - 12:20, 45:7
**welcome** [2] - 3:2, 3:12
**well-behaved** [1] - 39:16
**well-known** [1] - 50:8
**West** [1] - 1:24
**wheelchair** [1] - 31:18
**white** [3] - 54:13, 58:23, 59:4
**white-collar** [3] - 54:13, 58:23, 59:4
**whole** [6] - 21:8, 55:23, 56:25, 59:11, 61:4, 61:10
**wife** [5] - 18:22, 18:25, 35:14, 56:19, 61:8
**wife's** [2] - 19:22, 61:7
**willfully** [1] - 17:14
**window** [1] - 54:17
**wish** [2] - 49:12, 64:23
**wishes** [3] - 50:5, 52:19, 52:21
**woman** [2] - 31:25, 37:23
**wonder** [1] - 56:18
**wondering** [1] - 4:2
**Wood** [1] - 44:9
**word** [1] - 9:18
**wording** [1] - 62:3
**workforce** [1] - 38:3
**works** [1] - 32:7
**Works** [1] - 29:4
**world** [2] - 58:7, 61:10
**worth** [3] - 5:12, 5:14, 33:14
**write** [1] - 39:22
**writer** [1] - 47:19
**written** [2] - 5:12, 5:15
**wronged** [1] - 48:5
**wrote** [1] - 39:11
**WTF** [1] - 35:7

## Y

**year** [7] - 2:9, 14:24, 24:8, 26:13, 46:8, 46:18, 60:15
**yearlong** [1] - 20:11
**years** [39] - 6:18, 11:9, 11:22, 12:19, 14:16, 16:3, 18:7, 18:8, 27:14, 33:15, 34:16, 35:23, 36:20, 40:5, 40:6, 40:14, 40:15, 43:14, 43:24, 44:17, 45:10, 45:12, 45:13, 45:17, 47:3, 47:4, 47:13, 47:14, 47:15, 52:3, 54:14, 55:24, 56:10, 60:4, 60:12, 61:2, 61:16, 61:19
**yelling** [1] - 46:19
**York** [1] - 45:9

**young** [6] - 58:8, 58:9, 58:12, 58:14, 58:15, 58:25
**yourself** [2] - 5:6, 61:3

## Z

**Zoloft** [1] - 13:19

## §

**§** [10] - 2:12, 2:13, 13:3, 17:10, 19:10, 54:3, 55:15, 57:10, 57:25, 66:8